5 P.3d 1247 (2000)
141 Wash.2d 357
STATE of Washington, Respondent,
v.
Thaddius X. ANDERSON, Petitioner.
No. 67826-0.
Supreme Court of Washington, En Banc.
Argued March 9, 2000.
Decided August 10, 2000.
*1248 Kira McCrae, Michael Mittlestat, Seattle, for Petitioner.
*1249 Norm Maleng, King County Prosecutor, Ann Summers, Deputy, Seattle, for Respondent.
ALEXANDER, J.
The sole issue before us is whether "knowing possession" is an element of the crime of second degree unlawful possession of a firearm. We hold that "knowledge" is an element of the offense and, therefore, reverse the decision of the Court of Appeals, Division One, which affirmed the trial court's determination that second degree unlawful possession of a firearm is a strict liability offense.

I.
A vehicle driven by Thaddius X. Anderson was stopped by Seattle police officers for a traffic violation. During the traffic stop the officers learned that there was an outstanding warrant for Anderson's arrest. Consequently, the officers arrested Anderson and searched the vehicle incident to his arrest. During the search the officers found a handgun under the driver's seat of the car. Because Anderson had a prior felony conviction he was charged with second degree unlawful possession of a firearm.
At trial, Anderson contended that the handgun, as well as the vehicle, belonged to his cousin. Anderson said that he was unaware of the existence of the handgun until he was pulled over by the police officers. At the close of the presentation of evidence, the trial court instructed the jury that knowledge of the existence of the handgun was not an element of the offense, but that Anderson was entitled to an instruction that unwitting possession is a defense on which he had the burden of proof. The jury found Anderson guilty of the offense charged.
Anderson appealed his conviction to the Court of Appeals, Division One, which affirmed. State v. Anderson, 94 Wash.App. 151, 971 P.2d 585, review granted, 138 Wash.2d 1007, 989 P.2d 1138 (1999). We thereafter granted Anderson's petition for review.

II.
A person commits the crime of second degree unlawful possession of a firearm if he or she "owns, has in his or her possession, or has in his or her control any firearm" and the person has previously been convicted of any felony, other than a "serious offense," or certain specified gross misdemeanors. RCW 9.41.040(1)(a), (b), and (b)(i). Anderson asserts here, as he did at the trial court and at the Court of Appeals, that an implicit element of this crime is knowledge of the possession or presence of the firearm. He does not assert "that the State must prove `guilty knowledge'" on his part, but only that he had "`general intent'" to commit the crime, i.e. that he "`knew facts that would make his conduct illegal.'" Appellant's Opening Br. at 15 (quoting Staples v. United States, 511 U.S. 600, 114 S.Ct. 1793, 1797, 128 L.Ed.2d 608 (1994)). The Court of Appeals disagreed with Anderson's argument holding that the crime is a strict liability offense and that, as a consequence, the State did not have to show that he knew the car he was driving contained a gun. It went on to say that any danger that "entirely innocent conduct" may be encompassed by the statute is eliminated by virtue of fact that a person who claims lack of knowledge may assert and prove the defense of unwitting possession. Anderson, 94 Wash.App. at 157-58, 971 P.2d 585.
The question before uswhether second degree unlawful possession of a firearm is a strict liability offenseis one of first impression in this court. The appellate decision from this state that has come closest to addressing this question, prior to the Court of Appeals' decision here, is State v. Semakula, 88 Wash.App. 719, 946 P.2d 795 (1997), review denied, 134 Wash.2d 1022, 958 P.2d 317 (1998). In that case, which also emanated from Division One of the Court of Appeals, the court concluded that knowledge that the possession is unlawful is not an element of the offense. Semakula, 88 Wash. App. at 726, 946 P.2d 795; see also State v. Reed, 84 Wash.App. 379, 383, 928 P.2d 469 (1997) (citing approvingly a decision of the federal court, United States v. Smith, 940 F.2d 710, 714 (1st Cir.1991), that said a similar statute did not require the government to *1250 prove the defendant knew his possession was illegal, but only that he "knew he possessed the firearms"). The Semakula court went on to say that while unwitting possession is a defense to the crime, the State had to "prove that the defendant knew the facts that constitute the criminal conduct." Semakula, 88 Wash.App. at 726, 946 P.2d 795.
The Legislature may create strict liability crimes. State v. Rivas, 126 Wash.2d 443, 452, 896 P.2d 57 (1995). Our task is to determine if the Legislature did so in enacting RCW 9.41.040(1)(b). Any such inquiry must begin with a review of the language of the statute and any legislative history. State v. Bash, 130 Wash.2d 594, 605, 925 P.2d 978 (1996). The statute, unfortunately, is silent on the mental intent element. Its failure to be explicit regarding a mental element is not, however, dispositive of legislative intent.
The Court of Appeals concluded that the legislative history weighed in favor of a holding that the offense of second degree unlawful possession of a firearm is a strict liability offense. In doing so, it observed that the Legislature took note of the health and safety hazards associated with increasing violence in society and determined that efforts to reduce violence must include inhibiting the unlawful use of and access to firearms and implementation of "`many of the same approaches that public health programs have used to control other problems such as infectious disease, tobacco use, and traffic fatalities.'" Anderson, 94 Wash.App. at 157, 971 P.2d 585 (quoting LAWS OF 1994, 1st Spec. Sess., ch. 7, § 101). This is indicative, the court concluded, of the Legislature's intent to characterize the offense as a "public welfare offense," which can be regulated merely because it creates "danger or probability of it." Anderson, 94 Wash.App. at 157, 971 P.2d 585 (quoting Morissette v. United States, 342 U.S. 246, 250, 72 S.Ct. 240, 96 L.Ed. 288 (1952)).
Anderson suggests that the legislative history favors his position. He points out that the Legislature did not employ the measures it could easily have used to evidence an intent to make the offense a strict liability crime. He notes, for instance, that it did not, in passing the statute, remove an existing intent element. See State v. Cleppe, 96 Wash.2d 373, 378-79, 635 P.2d 435 (1981) (prior drug possession statute contained an intent element and its removal indicates strict liability intended). Anderson also observes that the statute did not establish any affirmative defenses or expressly state that lack of knowledge is not a defense. See State v. Dana, 84 Wash.App. 166, 176-77, 926 P.2d 344 (1996) (including affirmative defense indicates strict liability crime), review denied, 133 Wash.2d 1021, 948 P.2d 389 (1997); State v. Graham, 68 Wash.App. 878, 880, 846 P.2d 578 (explicitly eliminating lack of knowledge defense indicates strict liability intended), review denied, 121 Wash.2d 1031, 856 P.2d 382 (1993), abrogated by State v. Silva-Baltazar, 125 Wash.2d 472, 886 P.2d 138 (1994).
Although we are of the view that the legislative history is not conclusive on the issue of the Legislature's intent, we believe it tends to favor Anderson's argument. While we agree with the State that the Legislature revealed its intention to address the problem of increasing violence in our society, it did not indicate that the problem should be addressed by sweeping entirely innocent conduct within this statute relating to the possession and control of firearms. Its failure to do so is significant, we believe, because the Legislature has on many occasions shown an ability to make knowledge an element of an offense. Its additional failure to provide in the statute for the affirmative defense of unwitting conduct or to expressly eliminate lack of knowledge as a defense are, in our view, other indicators of its intent to make knowledge an element of the offense.[1]
*1251 In its effort to glean the intent of the Legislature, the Court of Appeals correctly took note of other relevant factors that this court identified in Bash as aids in determining whether the Legislature has created a strict liability crime. They are as follows:
(1) ... the statute must be construed in light of the background rules of the common law, and its conventional mens rea element; (2) whether the crime can be characterized as a "public welfare offense" created by the Legislature; (3) the extent to which a strict liability reading of the statute would encompass seemingly entirely innocent conduct; (4) ... the harshness of the penalty[;] ... (5) the seriousness of the harm to the public; (6) the ease or difficulty of the defendant ascertaining the true facts; (7) relieving the prosecution of difficult and time-consuming proof of fault where the Legislature thinks it important to stamp out harmful conduct at all costs, "even at the cost of convicting innocent-minded and blameless people"; and (8) the number of prosecutions to be expected.
Bash, 130 Wash.2d at 605-06, 925 P.2d 978.[2] All of these factors are to be read in light of the principle that offenses with no mental element are generally disfavored. Bash, 130 Wash.2d at 606, 925 P.2d 978.
As we noted above, the Court of Appeals determined that second degree unlawful possession of a firearm is a "public welfare" or "regulatory" offense that is frequently categorized as merely "malum prohibitum." Anderson, 94 Wash.App. at 157, 971 P.2d 585. Despite what it conceded was the common law preference for mental elements in crime, the court was persuaded that the seriousness of the harm to the public that this statute was designed to address suggested that the Legislature meant it to be a strict liability crime.
While we do not disagree with the Court of Appeals' determination that firearms are potentially dangerous items, we are mindful that a statute will not be deemed to be one of strict liability where such construction would criminalize a broad range of apparently innocent behavior. Thus, in Staples v. United States, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), the Court held that a person could not be convicted of unlawful possession of an unregistered machine gun unless the government proved that the defendant knew that the gun fell within the statutory definition of machine gun, since such items can be owned and possessed perfectly innocently. It seems clear to us that if the State is not required to prove knowing possession of a firearm there is a distinct possibility that entirely innocent behavior would fall within the sweep of this statute. In a free society we should be slow to conclude that such a result is intended by legislators.
Although the Court of Appeals made passing reference here to the harshness of the penalty for second degree unlawful possession of a firearm, it concluded that this factor was of little moment in light of its characterization of the offense as a public welfare offense. In our view, the Court of Appeals placed too little emphasis on the principle that "`the greater the possible punishment, the more likely some fault is required.'" Bash, 130 Wash.2d at 608-09, 925 P.2d 978 (quoting 1 LAFAVE & SCOTT § 3.8, at 343). The offense of second degree unlawful possession of a firearm is after all a class C felony. RCW 9.41.040(2)(b). While we have not always adhered to the suggestion from the United States Supreme Court in Staples, 511 U.S. at 618, 114 S.Ct. 1793, that a mental element should be required in statutes defining felony offenses (see State v. Lindberg, 125 Wash. 51, 215 P. 41 (1923)), the fact that the offense carries with it a *1252 maximum term of five years' imprisonment (see RCW 9A.20.021) is clearly a factor that weighs in favor of a holding that this offense is not one of strict liability. It is worth noting in this regard that the elements of the greater degree offense of first degree unlawful possession of a firearm are almost identical to those of the offense with which Anderson was charged. The only difference is that an element of the higher degree is that the defendant must have a "serious offense" in his past. RCW 9.41.040(1)(a). First degree unlawful possession of a firearm is a class B felony, and it is punishable by a maximum sentence that is twice that of the offense charged here. RCW 9.41.040(2)(a); RCW 9A.20.021. We can only assume that the State would make the same argument it makes here if the question before us were whether or not the greater offense was a strict liability crime.
The factor of seriousness of harm to the public also weighs in favor of Anderson. While one can easily argue that there is danger to the society if persons who have been convicted of certain crimes knowingly possess firearms, we fail to see how their unwitting possession of a firearm poses a significant danger to the public. Neither does the punishment of such persons further a goal of deterrence.
Some of the other factors we identified in Bash are not very helpful to us. LaFave and Scott tell us that while generally the fewer expected prosecutions, the more likely intent is required, the record tells us nothing about the number of persons who are prosecuted for the offense. 1 LAFAVE & SCOTT § 3.8, at 344. Furthermore, while we recognize that the State would find it helpful to be relieved of difficulties attendant to any criminal prosecution, we are reluctant to conclude that the State would generally find it burdensome to convince a jury that a person found in possession of a firearm was not aware of its presence. Contributing to our skepticism about the difficulties the State might face in such cases is the fact that since the statute in question was passed in 1935, no reported case has dealt with the issue of knowing possession. Indeed, if the State had charged Anderson with knowingly possessing the firearm,[3] it probably would have encountered few problems in showing that the vehicle Anderson was driving belonged to him, rather than his cousin, and that, in any case, he was aware of the fact that the gun was in the car. We reach that conclusion because one of the arresting officers testified that Anderson initially stated that the handgun was his. Furthermore, another witness testified for the State that Anderson usually went by a name very similar to that which Anderson attributed to his cousin. Finally, there was testimony from one of the police officers that Anderson was twice seen reaching under the driver's seat.
After considering all of the factors that are to assist us in determining if the Legislature intended to place the burden on the State to prove a culpable mental state, we conclude that it did. Our decision is influenced greatly by the harshness of the statutory penalty, the legislative history, and the absence of a showing of sufficient danger to the public to overcome the general rule favoring a mental element in felony statutes. Most compelling, though, is the fact that entirely innocent conduct may fall within the net cast by the statute in question. The danger of this is not, in our view, mitigated by the existence of an affirmative defense of unwitting conduct that the Court of Appeals has recognized. The burden of proof to establish such a defense resides with the defendant thus relieving the State of its traditional burden to prove each element of the crime by evidence, which is convincing beyond a reasonable doubt.
In sum, if we were to conclude that the offense is a strict liability crime, we would be flying in the face of the strongly rooted notion that strict liability crimes are disfavored. In that regard, no less authority than the United States Supreme Court has expressed this view with which we agree:
"The contention that an injury can amount to a crime only when inflicted by intention *1253 is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil."
Staples, 511 U.S. at 605, 114 S.Ct. 1793 (quoting Morissette, 342 U.S. at 250, 72 S.Ct. 240); Bash, 130 Wash.2d at 606, 925 P.2d 978 (quoting Morissette, 342 U.S. at 250, 72 S.Ct. 240). We are loath, in short, to conclude that the Legislature intended to jettison the normal requirement that mens rea be proved.
In sum, we hold that the trial court's jury instruction omitted an essential element of the offense charged. The Court of Appeals is, therefore, reversed and the case is remanded to the trial court for proceedings consistent with this opinion.
GUY, C.J., JOHNSON, MADSEN, and SANDERS, JJ., concur.
IRELAND, J. (dissenting).
"[W]hether a statute defines a strict liability crime is a question of statutory construction focusing on legislative intent." State v. Groom, 133 Wash.2d 679, 688, 947 P.2d 240 (1997). Here, the majority ignores the Legislature's clear intent to impose strict liability. Thus, I respectfully dissent.
While I do not fault the majority's reliance on the eight, nonexclusive factors cited in State v. Bash, 130 Wash.2d 594, 925 P.2d 978 (1996), I take issue with the majority's application thereof. To begin with, there are at least three defects in the majority's analysis of RCW 9.41.040's legislative history. First, in support of its conclusion that we should insert a mental element within RCW 9.41.040, the majority relies heavily upon the fact that "the Legislature did not employ ... measures it could easily have used to evidence an intent to make the offense a strict liability crime [, such as removing an existing intent element.]" Majority at 1250 (citing State v. Cleppe, 96 Wash.2d 373, 378, 635 P.2d 435 (1981)). The majority overemphasizes the absence of these "measures"; these "measures" are merely indicators of strict liability and not requirements to a finding thereof. See Cleppe, 96 Wash.2d at 378, 635 P.2d 435 (subsequently removing intent element indicates strict liability intended).
The second problem with the majority's historical analysis is its view that the Legislature's silence regarding intent is "significant,... because the Legislature has on many occasions shown an ability to make knowledge an element of an offense." Majority at 1250. The problem with this argument is that it can so easily be reversed to support precisely the opposite proposition. The Legislature's failure to include a mental element, in light of its demonstrated ability to include a mental element where it wants one, could just as reasonably indicate its intent to impose strict liability. Consequently, legislative silence is not as "significant" as the majority would have us believe.
Ironically, the third defect in the majority's analysis also involves the inferences that can or should be drawn from legislative silence. In its opinion, the Majority makes no mention of the fact that in a similar weapons possession statute, RCW 9.41.300, the Legislature explicitly included a mental element. This statute, which prohibits the possession of a firearm in certain restricted areas, specifically requires that the person "knowingly [possess] or knowingly [have] under his or her control a weapon." RCW 9.41.300(1) (emphasis added).[1] As this statute clearly demonstrates, the Legislature knows how to require "knowing possession." Thus, omitting the same mental element in a similar weapons possession statute, such as RCW 9.41.040, strongly indicates that the omission was purposeful and that strict liability was intended. See generally State v. Alvarez, 74 Wash.App. 250, 260, 872 P.2d 1123 (1994) (omission of "course of conduct" language in criminal counterpart to civil antiharassment act indicated "Legislature consciously chose to criminalize a single act rather than a course of conduct.") aff'd, 128 Wash.2d 1, 904 P.2d 754 (1995); see also State v. Roberts, 117 Wash.2d 576, 586, 817 P.2d 855 (1991) *1254 (use of certain statutory language in one instance, and different language in another, evinces different legislative intent) (citing cases).
Moving to the other factors cited in Bash, they either support the presumption in favor of strict liability created by the statute's legislative history or fail to overcome it. Beginning with the second Bash factor, the majority completely ignores the Legislature's intent to address the crime of unlawful possession of a firearm as a "public welfare," and thus a strict liability, offense.
Criminal offenses can be broken down into two general categories  malum in se and malum prohibitum. The distinction between malum in se and malum prohibitum offenses is best characterized as follows: a malum in se offense is "naturally evil as adjudged by the sense of a civilized community," whereas a malum prohibitum offense is wrong only because a statute makes it so. State v. Horton, 139 N.C. 588, 51 S.E. 945, 946 (1905).
"Public welfare offenses" are a subset of malum prohibitum offenses as they are typically regulatory in nature and often "`result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize.'" Bash, 130 Wash.2d at 607, 925 P.2d 978 (quoting Morissette v. United States, 342 U.S. 246, 255-56, 72 S.Ct. 240, 96 L.Ed. 288 (1952)); see also State v. Carty, 27 Wash. App. 715, 717, 620 P.2d 137 (1980). In Washington, public welfare offenses relate to public health and safety, including highway safety. See State v. Turner, 78 Wash.2d 276, 280, 474 P.2d 91, 41 A.L.R.3d 493 (1970).
Prior to Bash, Washington courts generally imposed strict liability for malum prohibitum offenses. See, e.g., Turner, 78 Wash.2d at 280-83, 474 P.2d 91 (malum prohibitum offenses presumed to be strict liability crimes). The problem with that approach, however, was that the analysis was often circular and arbitrary:
It hardly seems helpful to say that a crime which requires no bad intent is malum prohibitum, and that therefore no bad intent is required to commit the crime.
1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, Criminal Law § 1.6, at 33 n. 24 (2d ed.1986).
Our decision in Bash marked a change in that approach. With that case, the malum in se/prohibitum distinction was relegated to only one of eight, nonexclusive factors for determining the Legislature's intent to impose strict liability.
The majority opinion attempts to take this relegation one step further. Through its cursory examination, the majority essentially removes this factor from the analysis without ever discussing its rationale for doing so. The Legislature's intent to treat a crime as a public welfare offense, however, remains an important indicator of strict liability. See Bash, 130 Wash.2d at 606-08, 925 P.2d 978; Groom, 133 Wash.2d at 688, 947 P.2d 240.
Applying the second factor to the instant case, it becomes even more clear that strict liability should be imposed. In its 1994 amendments to chapter 9.41 RCW, the Legislature noted that "the increasing violence in our society causes great concern for the immediate health and safety of our citizens." Laws of 1994, 1st Sp. Sess., ch. 7, § 101 (emphasis added). The Legislature further stated: "State efforts at reducing violence must include changes in criminal penalties, reducing the unlawful use of and access to firearms." Id. By noting its concerns for the public's "immediate health and safety" created by the "unlawful use of and access to firearms," the Legislature clearly indicated its intent to treat unlawful gun possession as a public welfare offense. See Turner, 78 Wash.2d at 280, 474 P.2d 91. This fact is reinforced by the Legislature's subsequent statement that "the problem of violence can be addressed with many of the same approaches" as used with other public welfare offenses. Laws of 1994, 1st Sp. Sess., ch. 7, § 101 (emphasis added); see also Turner, 78 Wash.2d at 280, 474 P.2d 91.
Turning to the third Bash factor, I find the majority's concern that imposing strict liability would lead to criminalizing apparently innocent conduct misplaced and unwarranted. See Majority at 1251. First, felons do not lose their right to possess firearms accidentally. As the Legislature itself recognized in enacting RCW 9.41.040, felons have demonstrated *1255 that they present an ongoing threat to society. Consequently, it does not seem unduly burdensome to require felons to take extra precautions to ensure that they are not in possession of firearms.
Second, in its haste to rewrite legislation, the majority ignores the fact that all strict liability crimes have the potential of sweeping in apparently innocent actors, at least initially. If we were to impute a mental element whenever it becomes a possibility, we would be forever frustrating the Legislature's intent to impose strict liability.
Finally, even if we were to assume that imposing strict liability would unfairly criminalize apparently innocent behavior, any unfairness is ameliorated by the availability of unwitting possession as an affirmative defense. See State v. Cleppe, 96 Wash.2d 373, 380-81, 635 P.2d 435 (1981) (availability of unwitting possession defense is justification for imposing strict liability for crime of drug possession). Consequently, the risk of overburdening felons is significantly diminished and should not prevent this court from carrying out the Legislature's intent.
Regarding the harshness of the penalty imposed for violating RCW 9.41.040, the fourth Bash factor, the majority makes much of the fact that those found guilty of violating RCW 9.41.040 face up to five years' imprisonment. Majority at 1251-1252. As the majority correctly points out, however, there remains no per se rule in Washington requiring a mental element for all felony offenses. Id. In fact, in the very case the majority cites for this proposition, State v. Lindberg, 125 Wash. 51, 215 P. 41 (1923), this court found a statute stated a strict liability offense even though violation of that statute warranted five years' imprisonmentthe same maximum length of imprisonment involved here. Bash, 130 Wash.2d at 609, 925 P.2d 978 (discussing Lindberg). Therefore, there is precedent for the proposition that strict liability may be imposed where lengthy terms of imprisonment are involved.
In applying the fifth Bash factor, the majority "fail[s] to see how [a felon's] unwitting possession of a firearm poses a significant danger to the public." Majority at 1252. The problem with the majority's position is a problem that plagues the majority's entire opinion-its failure to acknowledge that the Legislature, not this court, decides matters of legislative policy. See Duke v. Boyd, 133 Wash.2d 80, 87, 942 P.2d 351 (1997) (this court refused to question the "wisdom" of legislative policy, enforcing statute as written) (citing case). Consequently, the Legislature is entitled to weigh, and in fact has weighed, the seriousness of harm to the public against the interests of felons and determined that the risk of harm to the public was both serious and high. See Laws of 1994, 1st Sp. Sess., ch. 7, § 101; see also Laws of 1995, ch. 129, § 1(a) ("Armed criminals pose an increasing and major threat to public safety[.]"). These findings are binding upon this court and, contrary to the majority's position, strongly favor imposing strict liability. See Groom, 133 Wash.2d at 689, 947 P.2d 240.
In its "seriousness of harm" discussion, the majority also asserts that imposing strict liability under the statute would not "further a goal of deterrence." Majority at 1252. The majority's view of deterrence, however, is too narrow. A comparison between this case and Bash illustrates this point.
In Bash, the court found that imposing strict liability under the dangerous dog statute would not accomplish the goal of deterrence "because unless the owner knows or reasonably should know of the dog's dangerous propensities, it is unlikely that the owner would think it necessary to use extraordinary care in controlling the dog." Bash, 130 Wash.2d at 610, 925 P.2d 978. Here, however, felons should always be on alert regarding the presence of firearms. As even the majority acknowledges, at page 1249, knowledge that the possession is unlawful is imputed to all felons. Thus, imposing strict liability simply gives felons an additional incentive to take extra precautions to avoid firearms and, in turn, creates an even greater deterrent effect.
Regarding the remaining Bash factors, the majority is correct that they add little to the determination in this case. Majority at 1252. Consequently, based on the factors discussed above, it appears that the majority attempts to contradict the Legislature's clear intent to *1256 impose strict liability and rewrites a statute it deems unduly harsh. The Court of Appeals should be affirmed.
SMITH, TALMADGE, and BRIDGE, JJ., concur.
NOTES
[1] Anderson also observes that the unlawful possession statute is based on the uniform firearms act, and that some other states that have adopted that act have said that knowledge is an element. See, e.g., People v. Snyder, 32 Cal.3d 590, 652 P.2d 42, 44, 186 Cal.Rptr. 485 (1982); Creamer v. State, 605 So.2d 541, 542 (Fla.App.1992); State v. Pinero, 70 Haw. 509, 778 P.2d 704, 715 (1989); State v. Stratton, 132 N.H. 451, 567 A.2d 986, 990 (1989). These decisions do so hold, but not all of them are persuasive with respect to Washington law. In Hawaii, for instance, statutes provide that all felonies must have some mental element unless the Legislature clearly provides that an offense is one of absolute liability. Pinero, 778 P.2d at 715. And in New Hampshire, a statute similarly says that one may not be convicted of a felony without some culpable mental state, and another statute specifically defines "possession" as "knowingly" possessing an item. Stratton, 567 A.2d at 990. Nonetheless, while the State notes the weaknesses in Anderson's reliance on out-of-state decisions, it points to no case that holds that a statute similar to Washington's defines a strict liability offense.
[2] We adopted these factors in Bash, 130 Wash.2d at 605-06, 925 P.2d 978. Factors (1)-(4) are from the United States Supreme Court decision in Staples, 511 U.S. at 615-19, 114 S.Ct. 1793. Factors (5)-(8) are from 1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, SUBSTANTIVE CRIMINAL LAW § 3.8, at 341-44 (1986).
[3] The State originally charged Anderson with "knowingly" possessing the firearm. For some reason it moved to amend the information on the first day of trial to delete the "knowingly" element. Its motion was granted.
[1] Cf. RCW 9.41.080 ("No person may deliver a firearm to any person whom he or she has reasonable cause to believe is ineligible under RCW 9.41.040 to possess a firearm." (Emphasis added.)).