FILED
COURT OF APPEALS
DIVISION II

2014 MAY -6 AM 8: 29

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44077-6-II |
| Respondent, | |
| v. | |
| TYSON TAKUMI MAXWELL, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Tyson Maxwell appeals his convictions for first degree unlawful possession of a firearm, unlawful possession of a controlled substance (methamphetamine, oxycodone, marijuana, and MDMA[1]) with intent to distribute, making false or misleading statements to a law enforcement officer, and unlawful use of drug paraphernalia. He also appeals the legal financial obligation (LFO) portion of his sentences. Specifically, he argues (1) insufficient evidence supports his unlawful possession of a firearm conviction, (2) the trial court violated his right to a public trial and his right to be present, and (3) the trial court erred by imposing LFOs. He also argues in his statement of additional grounds (SAG) that he received ineffective assistance of counsel and that there is insufficient evidence to uphold his unlawful possession of a controlled substance with intent to distribute convictions. Because there is insufficient evidence to support Maxwell's unlawful possession of a firearm charge as either a principal or an accomplice, we reverse that conviction and remand for the trial court to dismiss the charge with prejudice and resentence Maxwell. We affirm Maxwell's remaining convictions and sentences, including imposition of LFOs.

## FACTS

---

[1] MDMA is 3-, 4-methylenedioxymethamphetamine, or more commonly known as Ecstasy.

I.    BACKGROUND

On the morning of May 9, 2012, Officers Dave Miller and Alfred Stanford responded to a call regarding unwanted people in a hotel room at the Comfort Inn in Lacey, Washington. When nobody responded to their pounding on the door, the officers used the manager's key and found two men sleeping in their respective beds. After waking the men, the officers identified themselves as police and asked if the men were okay.

Miller observed "two smoking devices, a bag of marijuana, and then [sic] tinfoil with a long black burnt line on it." 1 Report of Proceedings (RP) at 62. He placed the men in handcuffs, sat them on the beds in which they were found sleeping, and read them their Miranda[2] rights. The men had no identification, and when questioned, both men provided false names. Maxwell subsequently confirmed his true and correct name. The police identified the other man as Anthony Banek. Maxwell told Miller that he came to the hotel room with a girl he met the previous night and that nothing in the room belonged to him. The room had actually been rented by Jisu Barbie Kim and Kim's boyfriend, who the hotel manager testified was not Maxwell but another gentleman with Kim.

When Miller exited the room to apply for a telephonic search warrant, another officer noticed Maxwell moving and fidgeting toward the head of the bed. The officer investigated and found a roll of rubber-banded money on the bed and some loose $20 bills sticking out of Maxwell's pocket. The money in the rubber band totaled $1,921 and the loose bills in Maxwell's pocket totaled $80.

---

[2] Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

After obtaining the search warrant, the officers searched the room with Maxwell present. They found numerous pieces of evidence, including: a hollow pen[3] and a piece of tinfoil[4] near the money; a small baggie of marijuana, a marijuana pipe, and a methamphetamine pipe at the end of Maxwell's bed; a long piece of tinfoil with a burnt line down the middle, another hollow pen, and two tablets inside a small container on a table; and another piece of tinfoil and pay/owe sheets on or in the nightstand. The officers also seized a small baggie of methamphetamine, a methamphetamine pipe, and a roll of tinfoil. In Banek's pillowcase was a bottle containing 14 pills. Under Banek's mattress the officers found a loaded .357 magnum revolver and in a backpack on the floor of the closet were three bullets. The officers also seized four knives, including one found on Maxwell's person, and four cell phones.

## II. PROCEDURAL HISTORY

Maxwell proceeded to a jury trial. The court conducted voir dire in open court with Maxwell present. After questioning the prospective jurors, the attorneys exercised their challenges for cause. The trial court then stated:

> The next step in this process, ladies and gentlemen, is the part where we actually choose the jurors in this case. During that process, the lawyers will be having a discussion with the clerk to my left, and some of those discussions are going to involve maybe looking out at your numbers and indicating their preferences and some discussions that the whole idea is that you don't hear what's going on.

RP (Jury Voir Dire) at 131.

At trial, Miller testified as an expert witness. He told the jury that, based on his training and experience, the $2,001 in cash Maxwell possessed was a large sum of money for a street level dealer and that Maxwell likely had the cash because he was getting ready to buy more

---

[3] Miller testified that hollow pens are often used as a pipe or straw to consume narcotics.

[4] Miller testified that tinfoil is used to smoke prescription drugs.

3

product. He also apprised the jury that people often work together or in groups to sell drugs and that it is common for drug dealers to carry weapons and have multiple cell phones. Miller further stated that the pay/owe sheets found in the nightstand contained various written words and numbers that are associated with drug dealing and that the writing included Banek's and Maxwell's nicknames.

A forensic scientist testified that the small baggie contained methamphetamine, the two tablets were MDMA, and the fourteen pills tested positive for oxycodone. An evidence technician confirmed the green leafy substance was marijuana.

Banek, who had accepted a plea bargain for his involvement, testified that the controlled substances were his. Banek further testified that the firearm and bullets were his, that he hid the firearm from everyone, and that Maxwell did not know about the firearm.

The jury found Maxwell guilty on all counts. The trial court sentenced Maxwell to 100 months in prison and imposed LFOs. Maxwell did not object to the trial court's imposition of the LFOs. Maxwell timely appeals.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE—UNLAWFUL POSSESSION OF A FIREARM

Maxwell argues insufficient evidence exists to support the jury's verdict on his unlawful possession of a firearm charge. When viewing the evidence in the light most favorable to the State, there is insufficient evidence to prove that Maxwell had dominion and control over the firearm, or that he knew of the firearm's presence. We reverse Maxwell's conviction for unlawful possession of a firearm and remand to the trial court to dismiss with prejudice.

44077-6-II

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 W.2d at 201. "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence are deemed equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "Credibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

A person commits first degree unlawful possession of a firearm when "the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted . . . of any serious offense as defined in this chapter."[5] RCW 9.41.040(1)(a). To establish that Maxwell unlawfully possessed a firearm, the State had to prove that he knowingly possessed it. *State v. Anderson*, 141 Wn.2d 357, 366, 5 P.3d 1247 (2000).

Knowing possession may be actual or constructive. *State v. Raleigh*, 157 Wn. App. 728, 737, 238 P.3d 1211 (2010). Constructive possession is "'established by showing the defendant had dominion and control over the firearm.'" *State v. Murphy*, 98 Wn. App. 42, 46, 988 P.2d 1018 (1999) (quoting *State v. Echeverria*, 85 Wn. App. 777, 783, 934 P.2d 1214 (1997)). "Dominion and control" means that the item "may be reduced to actual possession immediately." *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002). In establishing dominion and control,

---

[5] At trial, Maxwell stipulated that he had committed a serious offense prior to the events in this case and, thus, that element is not at issue on appeal.

5

the totality of the circumstances must be considered and no single factor is dispositive. *State v. Alvarez*, 105 Wn. App. 215, 221, 19 P.3d 485 (2001). The defendant's control over the firearm does not have to be exclusive. *Raleigh*, 157 Wn. App. at 737. But mere proximity to the firearm is insufficient to show control. *Raleigh*, 157 Wn. App. at 737.

In the present case, there is no contention that Maxwell had actual possession of the firearm. There is also insufficient evidence to prove Maxwell had dominion and control of the firearm, or that he even knew of its presence. In *State v. Chouinard*, 169 Wn. App. 895, 902-03, 282 P.3d 117 (2012), *review denied*, 176 Wn.2d 1003 (2013), we found the State presented insufficient evidence of constructive possession where the State demonstrated only the defendant's proximity to the firearm in the vehicle in which he was a passenger and that the defendant had knowledge of the weapon's presence in the vehicle. We held that evidence of mere proximity and knowledge, alone, is insufficient to show the defendant had dominion and control of the firearm, and, thus, could not sustain a conviction for constructive possession of a firearm. *Chouinard*, 169 Wn. App. at 902-03. Just as the defendant in *Chouinard* was in close proximity to the firearm in the vehicle, Maxwell was in close proximity to where the firearm was hidden in the hotel room—between Banek's mattress and box spring.

The State argues that Maxwell had knowledge of the firearm because after his arrest he had a phone conversation where he did not deny knowing about it. However, these statements must be considered in light of the fact Maxwell was present when the officers located and seized the firearm. There is no evidence Maxwell knew about the firearm before the officers found it hidden between Banek's mattress and box spring. Because the State proved only Maxwell's mere proximity to the firearm, there is insufficient evidence to prove that Maxwell had constructive possession of the firearm. *State v. Lee*, 158 Wn. App. 513, 517, 243 P.3d 929

6

(2010) ("[A] defendant with prior felony convictions may not be in violation of the law by simply being near a firearm if [the defendant] has not exercised dominion or control over the weapon or premises where the weapon is found.").

Further, because there is a lack of proof that Maxwell knew of the firearm's presence, he cannot be found guilty as an accomplice. RCW 9A.08.020(3)(a). An accomplice does not have to have knowledge of every element of the crime, but must have general knowledge of the specific substantive crime committed. *State v. Roberts*, 142 Wn.2d 471, 512-13, 14 P.3d 713 (2000); *State v. Sweet*, 138 Wn.2d 466, 479, 980 P.2d 1223 (1999). "[F]or one to be deemed an accomplice, that individual must have acted with knowledge that he or she was promoting or facilitating *the* crime for which that individual was eventually charged." *State v. Cronin*, 142 Wn.2d 568, 579, 14 P.3d 752 (2000) (emphasis in original).

Accordingly, there is insufficient evidence to prove Maxwell possessed the firearm or knew of its presence underneath Banek's mattress. We reverse Maxwell's conviction of first degree unlawful possession of a firearm and remand this case to the trial court with instructions to dismiss the unlawful possession of a firearm conviction with prejudice and resentence Maxwell.

II.    RIGHT TO A PUBLIC TRIAL

Maxwell argues the trial court violated his right to a public trial by allowing the attorneys to exercise peremptory challenges during a sidebar. In *State v. Dunn*, No. 43855-1-II, 2014 WL 1379172 (Wash. Ct. App. Apr. 8, 2014), we recently decided the issue Maxwell raises here. In *Dunn*, we held that the trial court did not violate a defendant's right to a public trial when the attorneys exercised peremptory challenges during a sidebar. 2014 WL 1379172, at *3. In deciding this issue, we adopted the reasoning of Division Three in *State v. Love*, 176 Wn. App.

7

911, 309 P.3d 1209 (2013) (peremptory challenges done at sidebar). *Dunn* controls here. Therefore, the trial court did not violate Maxwell's public trial right and his challenge fails.

III.    RIGHT TO BE PRESENT

Maxwell also argues the trial court violated his right to be present by allowing the attorneys to exercise peremptory challenges during a sidebar. Here, the record is unclear whether Maxwell was present when the attorneys exercised their peremptory challenges. The record shows that Maxwell was present during jury voir dire, and Maxwell argues there is no indication in the record that he joined counsel at the clerk's station when they exercised their peremptory challenges. At best, this allegation is supported by the trial court's statement, "The next step in this process, ladies and gentlemen, is the part where we actually choose the jurors in this case. During that process, the lawyers will be having a discussion with the clerk to my left." RP (Jury Voir Dire) at 131.

Although the trial court did not specifically call Maxwell to the clerk's station with his attorney, there is no indication whether Maxwell did or did not accompany counsel when counsel exercised the peremptory challenges. Because the record is unclear whether Maxwell was present at the clerk's station during the exercise of peremptory challenges, the claim relies, at least in part, on facts outside the record on appeal. We do not address issues on direct appeal that rely on facts outside the record. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

IV.    LEGAL FINANCIAL OBLIGATIONS (LFOs)

Maxwell argues the trial court lacked authority to impose a drug court fee and erred when it determined he had the present or future ability to pay. But Maxwell did not object to the trial court's imposition of the fines or fees. Therefore, he has waived his ability to challenge the trial

8

court's imposition of LFOs on appeal. RAP 2.5(a); *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492, *review granted*, 178 Wn.2d 1010 (2013).

## V.    SAG ISSUES

### A.    INEFFECTIVE ASSISTANCE OF COUNSEL

Maxwell asserts his trial counsel provided ineffective assistance. Because counsel's performance was not deficient, we hold Maxwell received effective assistance of counsel.

To prove ineffective assistance of counsel, Maxwell must show that counsel's performance was so deficient that it "fell below an objective standard of reasonableness" and that the deficient performance prejudiced him. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Performance is not deficient if counsel's conduct can be characterized as a legitimate trial strategy. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). To establish prejudice, the defendant must show a reasonable probability that the deficient performance affected the outcome of the trial. *Thomas*, 109 Wn.2d at 226 (quoting *Strickland*, 466 U.S. at 694). We review ineffective assistance of counsel claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

Maxwell first contends that counsel provided ineffective assistance for not requesting a fingerprint analysis of the firearm found in the hotel room and for not requesting that a handwriting analysis be performed on the pay/owe sheets found in the hotel room. Counsel's decisions were legitimate trial strategies. By not requesting fingerprint or handwriting analyses, trial counsel avoided any possible negative findings from the analyses and was also able to argue at trial that the investigating officers had not done fingerprint or handwriting analyses nor did they have such proof that the items in the room were Maxwell's or that the pay/owe sheets were

9

authored by him. Trial counsel asked Miller, "[Y]ou didn't have any fingerprints taken off of any of the items, tinfoil or otherwise?" to which Miller responded that he did not "believe so." 2 RP at 233. Thus, counsel's performance in not requesting fingerprint and handwriting analyses was a legitimate trial strategy.

Maxwell next asserts counsel provided ineffective assistance for objecting to a photograph of him only for its depiction of his tattoo and not because it showed him in handcuffs. The challenged photograph is not in the record, and other than Maxwell's argument that the photograph shows him in handcuffs, there is no other evidence or support in the record that the challenged photograph shows him in handcuffs. Thus, we cannot properly review Maxwell's argument.

Lastly, Maxwell contends counsel provided ineffective assistance for failing to object to the jail phone conversations and allowing the State to play portions of the recording, which, in turn, Maxwell argues allowed the jury to take his statements out of context. The State, however, played the entirety of the call and not portions as Maxwell alleges. Thus, this argument fails. We hold Maxwell's trial counsel provided effective assistance of counsel.

B.    SUFFICIENCY OF THE EVIDENCE—POSSESSION WITH INTENT TO DELIVER

Maxwell asserts there is insufficient evidence to uphold his unlawful possession of a controlled substance with intent to deliver convictions.[6] We hold there was sufficient evidence to allow a rational trier of fact to find, beyond a reasonable doubt, that Maxwell is guilty of unlawful possession of a controlled substance (methamphetamine, oxycodone, MDMA, and marijuana) with intent to deliver. *See Salinas*, 119 Wn.2d at 201. The officers found a small

---

[6] Maxwell does not specifically identify which unlawful possession with intent to deliver convictions he is challenging and, instead, argues generally that there is insufficient evidence to support the convictions.

10

baggie of marijuana, two MDMA tablets, 0.1 grams of methamphetamine, fourteen oxycodone pills, a marijuana pipe, a methamphetamine pipe, hollowed pens that are commonly used for consumption of drugs, a piece of burnt foil with a black line down the middle, approximately $2,000 in cash, four cell phones, a roll of tinfoil, and pay/owe sheets in the hotel room in which Maxwell was found sleeping. Additionally, Maxwell provided a false name to officers when asked for his identification in the hotel room. Accordingly, there is sufficient evidence to support Maxwell's unlawful possession of a controlled substance with intent to deliver convictions.

We reverse Maxwell's unlawful possession of a firearm conviction and remand for the trial court to dismiss the conviction with prejudice and resentence Maxwell. We affirm Maxwell's remaining convictions and sentences, including imposition of LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Hunt, J.

Worswick, C.J.

11