# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58213-9-II |
| Respondent, | |
| v. | |
| RONALD KEITH MIDDLEBROOKS, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—In September 2020, Officer Nile Teclemariam stopped Ronald Middlebrooks for driving without his headlights on in the middle of the night. Middlebrooks was alone in the car and Teclemariam saw Middlebrooks moving around in the car after he pulled Middlebrooks over. When contacted, Middlebrooks provided a false name and date of birth. Officers ultimately arrested Middlebrooks, got a search warrant, and searched Middlebrooks' car. They found a pistol, loaded magazines, and extra ammunition in various bags and compartments in the car, all within arms' reach of Middlebrooks. The State charged Middlebrooks with unlawful possession of a firearm in the first degree among other things.

On the morning of the second day of trial, the State produced for the first time a recorded jail call between Middlebrooks and an unidentified woman that the State believed was helpful to its case. The State sought to admit the recording and Middlebrooks objected because the State had violated CrR 4.7 and the court's pretrial orders governing discovery by producing the recording after the omnibus hearing. The trial court admitted the recording because Middlebrooks could not

articulate specifically how the late production was prejudicial to his defense. The jury found Middlebrooks guilty, and the court imposed a $500 crime victim penalty assessment.

Middlebrooks appeals his conviction for unlawful possession of a firearm, arguing that the State failed to present sufficient evidence of knowing possession of the firearm. He further argues that the trial court abused its discretion when it admitted the recording of the jail call. Finally, he asks us to remand to strike the crime victim penalty assessment from his judgment and sentence.

The evidence is sufficient to support Middlebrooks' conviction and the trial court did not abuse its discretion by admitting the audio recording of the jail call. We affirm Middlebrooks' conviction but remand for the trial court to strike the crime victim penalty assessment.

FACTS

I. MIDDLEBROOKS' ARREST AND SEARCH OF THE CAR

In September 2020, Middlebrooks was driving a Nissan[1] without headlights on at approximately 3:00 AM. Lakewood Police Officer Nile Teclemariam conducted a traffic stop. Once he and Middlebrooks came to a stop, Teclemariam turned his vehicle's spotlight on Middlebrooks' car. From inside his police car, Teclemariam saw Middlebrooks move from the driver's seat toward the passenger area of his car. That movement caused Teclemariam to call another officer to the scene. Teclemariam then waited for approximately one minute and thirty seconds until Lakewood Police Officer Cody White arrived.

While he waited, Teclemariam continued to observe Middlebrooks. He testified that during that time, he saw Middlebrooks check his rearview mirror, then move his body into the center console area where he "crept down, [then] moved back over [into the driver's seat] and looked

---

[1] Middlebrooks was not the registered owner of the car he was driving.

directly out of the side-view mirror." Verbatim Rep. of Proc. (VRP) (Apr. 6, 2023) at 181-82. When Officer White arrived, Teclemariam approached the car and asked Middlebrooks for his license, registration, and proof of insurance. Middlebrooks responded that he had none of those documents and gave Teclemariam a name and date of birth. Middlebrooks was sweating and seemed hesitant to share his personal information. Because Middlebrooks seemed overly nervous, Teclemariam required him to exit his car.

Teclemariam asked Middlebrooks if there were any weapons in the car. Middlebrooks responded that there were none that he was aware of. Teclemariam then checked the Department of Licensing database for the name and date of birth Middlebrooks provided and discovered that the person who came up was obviously a different height and weight. Teclemariam concluded Middlebrooks had lied about his identity. Further, White realized he recognized Middlebrooks from White's time working at the Department of Corrections.

The officers arrested Middlebrooks and recited a *Miranda*[2] warning. Middlebrooks then told the officers his real name. Teclemariam discovered that Middlebrooks had a suspended driver's license and an outstanding warrant for his arrest. He then applied for a search warrant for Middlebrooks' car, which was executed the following day.

In the car, police found a loaded pistol magazine in the center console. They found Middlebrooks' identification in a small pouch tucked in the backside pocket of the front passenger seat. They also found a backpack on the floorboard behind the passenger seat. The backpack contained a holstered pistol with another loaded magazine as well as a smaller athletic bag. The

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

bag contained spare ammunition for the pistol and black latex gloves. The backpack also contained men's clothing, which were mixed amongst the other contents.

The officers testified consistent with these facts and the trial court admitted photographs of the car and its contents, including the backpack, the gun, and the men's clothes.

## II. LATE PRODUCTION OF JAIL CALL RECORDING

Middlebrooks' jury trial began in April 2023. On the morning of the second day of trial, Officer Teclemariam shared with the prosecutor a recording from the Nisqually jail of a call between Middlebrooks and an unidentified woman.

In the call, Middlebrooks told the woman that police "got [his] toy," they took his "toy and searched it." Ex. 36. He also said the backpack belonged to "Michael," who left it in his car. *Id.* He further stated that shortly before he was pulled over he had changed clothes.

Teclemariam explained under oath why it took him until the second day of trial to share the recording. He generally would conduct further investigation into cases that involved firearms. So, a few weeks after Middlebrooks was arrested in September 2020, Teclemariam listened to several of his jail calls. Teclemariam created notes about the recordings after he listened to them. At the time, he did not think to notify prosecutors about the call because during the COVID-19 pandemic, the State delayed charging nonviolent offenses, so it did not charge Middlebrooks with unlawful possession at that time.

However, his testimony on the first day of trial prompted Teclemariam to review the notes he took on Middlebrooks' jail call over the weekend between the first and second days of Middlebrooks' trial. He believed that one recording was pertinent to the unlawful possession charge, so he sent it to the prosecutor on the morning of the second day.

The State sought admission of the recording. Middlebrooks objected to admission of the recording because of its late production. He asked the court to exclude the recording.

The trial court held a lengthy hearing where the parties argued about admission of the recording. Defense counsel argued that the State's late production of the recording was "prejudicial to the defendant that has to prepare a case for trial and formulate some kind of strategy," because Middlebrooks was "blindsided with this . . . evidence on the last day of trial." 2 VRP (Apr. 10, 2023) at 175. The parties and the trial court pointed out that various statements in the recording could be interpreted as being helpful to both the State and the defense. For example, it would be helpful to the State if "toy" referred to the gun and the clothes in the backpack were connected to Middlebrooks, who spoke about changing his clothes in the recording. But Middlebrooks pointed out that "toy" would more logically refer to the car Middlebrooks was driving because he said his "toy" was searched, and he plainly said in the recording that the backpack belonged to someone else at a time before he was ever charged with unlawful possession of the gun.[3] Defense counsel argued that to the extent the recording was helpful to the defense, it could have influenced Middlebrooks' strategic decisions, for example, his decision whether or not to testify. Thus, Middlebrooks argued he suffered prejudice from the late disclosure.

The trial court admitted the recording despite Middlebrooks' objection. The court concluded that the State had failed to fulfill its discovery obligations because it did not uncover and produce the recording earlier. However, the delayed production of the recording was not willful. Further, the court explained that it did not find any prejudice because Middlebrooks was

---

[3] Middlebrooks was originally held on a different charge, and the State charged Middlebrooks with unlawful possession of a firearm after the recorded conversation occurred.

aware of the call and its contents because he participated in it. The court gave defense counsel another chance to identify prejudice, but the court remained unswayed after Middlebrooks could not articulate specifically how the late production negatively affected his defense strategy.

The jury heard the recording of the jail call, and the State replayed the call during closing. The State argued in closing that the reference in the call to a "toy" could have been code for the gun. It also relied on the statement that Middlebrooks changed clothes shortly before he was pulled over. Defense counsel countered that the reference to searching Middlebrooks' "toy" did not make sense unless he was actually referring to his car, which was searched. And counsel drew the jury's attention to Middlebrooks' statement that the backpack was not his, as well as the fact that this statement could not have been motivated by the charge for unlawful possession of a firearm, which occurred much later.

The jury found Middlebrooks guilty of unlawful possession of a firearm in the first degree. The trial court imposed a $500 crime victim penalty assessment at sentencing.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Middlebrooks argues that the State failed to meet its burden to prove knowing possession of the firearm. According to Middlebrooks, "the State demonstrated Middlebrooks' mere proximity to the weapon, and nothing more." Opening Br. of Appellant at 12. We disagree.

A.    Constructive Possession

Evidence to support a conviction is sufficient if, when viewing the evidence in the light most favorable to the State, any rational trier of fact could find guilt beyond a reasonable doubt. *State v. Bergstrom*, 199 Wn.2d 23, 40-41, 502 P.3d 837 (2022). In arguing that the evidence is

6

insufficient, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id.* at 41. We defer to the jury as to the credibility of witnesses and the persuasiveness of the evidence. *Id.* Further, circumstantial and direct evidence are considered equally reliable. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017).

RCW 9.41.040(1)[4] states that "[a] person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the first degree, if the person . . . possess[es] . . . any firearm after having previously been convicted . . . of any serious offense." Middlebrooks stipulated that he had previously been convicted of a serious offense under the statute. Middlebrooks disputes whether there was sufficient evidence that he knowingly possessed the firearm found in his car.

To be guilty of unlawful possession of a firearm, possession must be "knowing." *State v. Anderson*, 141 Wn.2d 357, 366, 5 P.3d 1247 (2000). Either actual or constructive possession can constitute knowing possession. *State v. Chouinard*, 169 Wn. App. 895, 899, 282 P.3d 117 (2012). Here, the State sought to prove Middlebrooks' guilt via constructive possession.

Constructive possession occurs where a defendant exerts dominion and control over an item. *State v. Davis*, 182 Wn.2d 222, 234, 340 P.3d 820 (2014) (Stephens, J., dissenting); *id.* at 232-33 (Wiggins, J., and three additional justices concurring with Justice Stephens' opinion on whether evidence was sufficient for constructive possession). Whether a person had dominion and control is determined by the totality of the circumstances. *Id.* at 234 (Stephens, J., dissenting). While proximity to the item and ownership of the premises may be considered, these factors are not alone sufficient. *Id.*

---

[4] We cite the current statute as the relevant language has not changed.

Multiple cases have evaluated evidence of constructive possession where contraband was found in a car. Factors weighing against constructive possession include when a passenger is not in control of the car or the contraband inside it. For example, in *Chouinard*, the defendant rode in the backseat of a car as a passenger. *Chouinard*, 169 Wn. App. at 897. He knew a firearm was behind the backseat. *Id.* at 898. However, evidence was insufficient to prove constructive possession because there were multiple other occupants and there was no evidence Chouinard was in control of the car or firearm. *Id.* at 900-03.

In contrast, where the defendant controlled the car, a jury can infer that the defendant constructively possessed the item within it. For instance, "[a]n individual's sole occupancy and possession of a vehicle's keys sufficiently supports a finding that the defendant had dominion and control over the vehicle's contents," even where the firearm was not visible because it was inside a bag. *State v. Bowen*, 157 Wn. App. 821, 828, 239 P.3d 1114 (2010). Ownership of the car is relevant. *See id.; see also State v. Turner*, 103 Wn. App. 515, 523-34, 13 P.3d 234 (2000). However, given that we consider the totality of the circumstances, ownership is not necessary, especially where the defendant was the sole person in the car, not a passenger. *See State v. Listoe*, 15 Wn. App. 2d 308, 327, 475 P.3d 534 (2020).

B.      The State Put Forth Sufficient Evidence

Here, Middlebrooks points to facts that, in his view, show that the State failed to meet its burden: he did not own the car he was driving, there was a woman's hairbrush in the center console, there was no evidence regarding how long he had been driving the car before he was arrested, the firearm was not in plain sight at the time of the traffic stop, no fingerprints were found on the gun, and Middlebrooks never claimed he owned or was aware of the gun.

But Middlebrooks was in control of the car; he was the sole occupant and driver. Officer Teclemariam observed Middlebrooks moving about his vehicle for a minute and a half before approaching him. A pistol with a loaded magazine, a spare loaded magazine, and extra ammunition were all found in containers within arms' reach of Middlebrooks. Men's clothing was found in the backpack that contained the pistol, and according to the jail call recording, Middlebrooks had recently changed clothes. Although in the same call he claimed the backpack belonged to "Michael," who had forgotten it, we view conflicting evidence in the light most favorable to the State. We do not reweigh conflicting evidence ourselves. *Cardenas-Flores*, 189 Wn.2d at 266.

Considering the totality of the circumstances, and viewing the evidence in the light most favorable to the State, we conclude that a rational jury could infer from the evidence that Middlebrooks constructively possessed the pistol, even though the evidence was conflicting.

## II. LATE PRODUCTION OF THE AUDIO RECORDING OF THE PHONE CALL

A.    Production of Evidence in a Criminal Case

CrR 4.7(a)(1)(ii) requires the prosecuting attorney to disclose any written or recorded statements to the defendant no later than the omnibus hearing. The State produced the recording of Middlebrooks' jail call on the second day of trial. Thus, the trial court correctly found that the State failed to fulfill its discovery obligations and violated both CrR 4.7 and its pretrial orders. However, the court admitted the recording.

Where a party fails to comply with a discovery rule, "the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances." CrR 4.7(h)(7)(i). "Discovery decisions based on CrR 4.7 are within the sound discretion of the trial

court." *State v. Hutchinson*, 135 Wn.2d 863, 882, 959 P.2d 1061 (1998). Discretion is abused "when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds or for untenable reasons." *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993). "Absent some showing of actual prejudice, we will not interfere with the trial court's exercise of discretion in denying sanctions pursuant to CrR 4.7(h)(7)(i)." *State v. Bradfield*, 29 Wn. App. 679, 682, 630 P.2d 494 (1981). Relevant here, excluding evidence is an extraordinary remedy that courts should apply narrowly where less severe remedies, like a continuance, would be meaningless or serve no purpose. *Hutchinson*, 135 Wn.2d at 881-82.

B.      Middlebrooks Does Not Demonstrate That the Trial Court Abused Its Discretion

Middlebrooks argues that the trial court should have excluded the recording. He states generally that the late production left him unable to adequately prepare his defense and deprived him of the ability to use the recording to negotiate a plea bargain. He further alleges that the trial court failed to conduct the appropriate analysis to determine whether to grant an exclusion. However, he does not explain why a less severe remedy would have been ineffective so as to require an extraordinary remedy like exclusion. In fact, the trial court denied relief because it believed that there was insufficient prejudice to warrant even a continuance. Further, he fails to illustrate specifically how the late production of the recording changed his defense strategy in light of the fact that portions of it favored both the prosecution and his defense.

Middlebrooks claims he suffered prejudice similar to that in *State v. Sherman*, 59 Wn. App. 763, 801 P.2d 274 (1990). In *Sherman*, the trial court granted the defendant's motion to dismiss. *Id.* at 766. By the time the trial started, the State had neither provided a witness list to the defendant nor disclosed records that were subject to an omnibus order. *Id.* Further, the State sought to expand

the witness list after trial had already commenced. *Id.* Notably, a continuance was insufficient to cure the remedy because the trial had already been extended seven times. *Id.* at 769. Thus, Division One upheld the trial court's decision to grant a motion to dismiss. *Id.* at 773.

*Sherman* is distinguishable. First, the defendant was faced with far more egregious discovery violations and mismanagement than Middlebrooks and *Sherman* involved application of CrR 8.3, addressing prosecutorial misconduct, as well as CrR 4.7. Here, the State was very late to produce the recording, but the trial court found that the State did not act willfully. The recording began with a plain statement that the call was being recorded and Middlebrooks does not deny that he made the call or that he knew the recording existed.

Second, the court in *Sherman* upheld the trial court's dismissal of that case. It did not hold that the trial court would have abused its discretion had it decided not to dismiss the case or adopted a lesser sanction. Thus, *Sherman* did not set a baseline for when discovery violations require relief. Here, we must decide if Middlebrooks faced prejudice to the extent that a trial court abused its discretion when it admitted the late disclosed evidence. Therefore, *Sherman* is of little help.

The State argues that *State v. Barry*, 184 Wn. App. 790, 339 P.3d 200 (2014), is more applicable. In *Barry*, the State produced a recording of the defendant's confession five days before the start of the trial. *Id.* at 795. The defendant argued that if his counsel had known about the recording during plea negotiations, counsel would have advised the defendant differently on whether to accept the State's plea offer. *Id.* at 797. Division Three held that the recorded confession was not prejudicial in part because he was aware he had confessed and knew his confession was recorded. *Id.* at 798.

Here, although the circumstances are not exactly the same, like the court in *Barry*, we do not find prejudice where Middlebrooks was aware that his call was recorded, he knew who he was talking to, and he knew what was said in the call. But independent of similarities to *Barry*, we also find that the equivocal nature of the evidence in this case supports a lack of prejudice.

The recording contained some statements that supported the State, for example, the admission that Middlebrooks changed clothes just before he was pulled over. But it also contained some statements that supported Middlebrooks' version of events, for example, his statement that the backpack belonged to someone else. Both parties used portions of the call to support their closing arguments to the jury.

In light of the fact that Middlebrooks used the recording to strengthen his defense, it is difficult for him to show how he was prejudiced by its late disclosure and admission. Notably, Middlebrooks claims the delayed disclosure impeded his ability to strategize and present his defense, but he has never explained exactly how. Defense counsel suggested that Middlebrooks could have summoned the other person on the call as a defense witness if he had earlier access to the recording. But Middlebrooks fails to articulate how her testimony would have helped his case. Middlebrooks also argues that plea negotiations were impeded by the late production of the recording. But here, too, he does not explain how. He merely states that it deprived him of a "full understanding" of the evidence. Opening Br. of Appellant at 24. Again, the recording contained both helpful and damaging statements. Middlebrooks' broad arguments about prejudice fail to establish any specific prejudice Middlebrooks suffered from the late disclosure of the recording.

Although it may have also been within the trial court's discretion to exclude the recording, because Middlebrooks has not demonstrated prejudice, he has not shown that the trial court abused

its discretion when it admitted the recording despite the State's delay in producing it. Thus, we decline to reverse on this basis.

### III. CRIME VICTIM PENALTY ASSESSMENT

At sentencing, the trial court imposed a $500 crime victim penalty assessment. In 2023, the legislature amended RCW 7.68.035 to prohibit courts from imposing the crime victim penalty assessment on indigent defendants as defined in RCW 10.01.160(3). LAWS OF 2023, ch. 449, § 1(4). We have held that recent amendments to statutes governing legal financial obligations apply retroactively to matters pending on direct appeal. *State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). The State concedes that Middlebrooks meets the indigency requirements and the crime victim penalty assessment should be stricken. We accept the State's concession and therefore remand for the trial court to strike the crime victim penalty assessment.

### CONCLUSION

We affirm Middlebrooks' conviction but we remand for the trial court to strike the crime victim penalty assessment.

No. 58213-9-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

MAXA, P.J.

PRICE, J.