[No. 22014-4-I.   Division One.   July 17, 1989.]

THE STATE OF WASHINGTON, *Appellant*, v. MARK COLEMAN, *Respondent*.

*Norm Maleng, Prosecuting Attorney,* and *Kelly J. Thomas, Deputy,* for appellant.

*Michael J. Lambo,* for respondent.

FORREST, J.—The State appeals from the order arresting the judgment of Mark Coleman's conviction of theft in the second decree, which was entered on the grounds of (1) insufficiency of the evidence; and (2) prosecutorial misconduct. We reverse.

On August 28, 1987, Coleman was charged with theft in the first degree. He had been employed as a dance instructor at The Dance Factory by Sharon Ardelle. He was accused of receiving money from his dance students and not turning the money over to Ardelle or the firm's receptionist, as was the expected practice.

After a change in defense counsel and a request by the State, Coleman's trial date was delayed from December 16, 1987, to January 20, 1988. Coleman's counsel had requested that the State allow him discovery access to the accounting records of The Dance Factory. The State did not provide the records, stating that the records were not under its control. The trial date was twice delayed, to January 27. No courtroom was available on that date, but a hearing was held on the discovery request. The court ordered that the State "assist" Coleman's request to examine the records of The Dance Factory. Coleman's counsel was allowed 45 minutes during that evening to review the records. The case was placed on "standby" on January 28. The State informed Coleman's counsel that the records were available for further examination, but Coleman's counsel stated that he was not available because of the "standby" status of the case.

On January 29, the case was assigned to Judge Eberharter. Coleman moved to dismiss the charges, claiming that the State had failed to provide discovery materials. The court refused to dismiss the charges, but continued the trial from Friday to Monday and required that The Dance Factory records be provided to Coleman for the weekend. The State then announced its witness list, which included three new witnesses. The State had informed Coleman of these new witnesses on January 27, but had provided a telephone number for only one of the witnesses.

Trial commenced on February 1. Sharon Ardelle testified that a customer, Maureen McClanahan, had approached her with the suspicion that Coleman was failing to turn over money paid by customers. After checking her records, Ardelle confronted Coleman and fired him. He apologized and pleaded to get his job back, but was unsuccessful. Alex Hawkins, another employee of The Dance Factory, overheard this conversation.

Penny Palmer and Debbie Hall testified that they paid $1,450 and $150, respectively, in cash to Coleman for dance lessons. Ardelle testified that there was no record of these

funds ever having been turned in by Coleman, nor did she recall having received the money from Coleman. The receptionist, Jennifer Myrick, testified that she had never received amounts of cash from Coleman in the magnitude paid by Palmer and Hall. A former boyfriend of Ardelle, Jason Russell, testified that while attending a boxing match with Coleman after his termination, Coleman said that he had "stolen or borrowed" $3,000 from Ardelle, had been fired as a result, and had not been allowed to repay the money. Hawkins, Myrick, and Russell were the three witnesses identified on January 27. A fourth possible witness, a maintenance man at The Dance Factory, was neither identified to Coleman nor called at trial.

During cross examination, Coleman exposed irregularities in Ardelle's bookkeeping system, including depositing payments in bank accounts other than that for The Dance Factory and secreting envelopes of cash in Ardelle's house. Coleman contended that there was no proof of his theft of the money because of the irregularities of the bookkeeping. At the end of the State's case, Coleman moved for dismissal, arguing the evidence was insufficient to prove theft. The motion was denied, and Coleman declined to present a defense. The jury convicted Coleman of the lesser–included crime of theft in the second degree.

Coleman moved for arrest of the judgment, claiming that the evidence was insufficient to prove theft beyond a reasonable doubt and that the State had engaged in arbitrary action to frustrate his requests for discovery. The court granted the motion, arrested the judgment, and refused to grant a new trial. The State appeals.

### INSUFFICIENCY OF THE EVIDENCE

An order arresting judgment is governed by CrR 7.4(a), which provides:

> Judgment may be arrested on the motion of the defendant for the following causes: (1) Lack of jurisdiction of the person or offense; (2) the indictment or information does not charge a crime; or (3) insufficiency of the proof of a material element of the crime.

Here the order is based on subsection (3). The court's findings of fact and conclusions of law do not identify what elements of theft were not proved beyond a reasonable doubt. When asked to include that information in the findings and conclusions, the court declined. The basis for the court's action appears to be the following language from the oral opinion:

> I further noted that I personally would have difficulty in finding the defendant guilty on the presented facts, because I have in mind how many more times the books show cash came in and yet it was not deposited in a bank and no record made of it at all. I realize she [Ardelle] was probably trying to keep it away from the Internal Revenue Service, like you mentioned.

In reviewing the "sufficiency of the evidence", which is legally the same issue as "insufficiency of the proof of a material element of the crime", the standard is stated in *State v. Green*[1] and *Jackson v. Virginia*:[2] whether there was sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt. Prior to *Green,* the test was whether there was "substantial evidence." *State v. Randecker.*[3] *Green* changed the quantum of evidence necessary to support the jury's verdict from "substantial evidence" to "sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt", but did not change the division of responsibility between the judge and the jury, or the judge's role in evaluating the record. What evidence would satisfy the *Randecker* test but not the *Green* test is unclear. What is clear is that the way the judge exercises his responsibility, by identifying the presence of evidence but not evaluating it, remains the same. That function was stated in *Randecker,* a similar case in

---

[1] 94 Wn.2d 216, 220, 616 P.2d 628 (1980).

[2] 443 U.S. 307, 316, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979).

[3] 79 Wn.2d 512, 515, 487 P.2d 1295 (1971).

which the trial judge granted the motion in arrest of judgment which was being reviewed on appeal.

A trial court may not *weigh the evidence* to determine whether the necessary quantum has been produced to establish *some proof* of an element of the crime. It may only test or examine the *sufficiency* thereof. The jury is the sole and exclusive judge of the weight of evidence, and of the credibility of witnesses. In other words, the trial court must concern itself only with the presence or absence of the required quantum.

In determining whether the necessary quantum exists, the trial court must assume the truth of the state's evidence and view it most strongly against the defendant and in a light most favorable to the state. It must draw all inferences that reasonably can be draw therefrom in favor of the state's position.

In the same vein, the court is only empowered to determine whether there is "substantial evidence" tending to establish circumstances on which a necessary element of a crime may be predicated. However, whether the circumstances tending to connect the defendant with the crime, or tending to establish intent exclude, to a moral certainty, every other reasonable hypothesis than that of the defendant's guilt, is, again, a question for the jury.

(Citations omitted.) *State v. Randecker, supra* at 517.

In view of the judge's comment, the following language is particularly significant:

The fact that a trial or appellate court may conclude the evidence is not convincing, or may find the evidence hard to reconcile in some of its aspects, or may think some evidence appears to refute or negative guilt, or to cast doubt thereon, does not justify the court's setting aside the jury's verdict.

*State v. Randecker, supra* at 517–18.

The evidence of theft against Coleman most favorable to the State was as follows:

1. Palmer and Hall testified that they gave cash totaling $1,600 to Coleman for dance lessons and that he put the cash in his pocket;

2. Ardelle and Myrick testified that they never received money from Coleman in the amounts paid by Palmer and Hall, and that there were no records of the money having been received;

3. Hawkins testified that Coleman apologized after being confronted by Ardelle and that he pleaded to keep his job; and

4. Russell testified that Coleman told him that he had "stolen or borrowed" $3,000 from Ardelle.

This evidence is sufficient for a rational trier of fact to find beyond a reasonable doubt that Coleman was guilty of theft in the second degree. The court's concerns go to the credibility of Ardelle, which is impermissible. The court erred in arresting the judgment based on insufficiency of the evidence.

### DISMISSAL PURSUANT TO CrR 8.3(b)

The second ground relied upon by the trial court in granting the motion for arrested judgment was CrR 8.3(b), which states:

> The court on its own motion in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution and shall set forth its reasons in a written order.

The court's reasons for the dismissal were: (1) the State's hindering and delaying of Coleman's requests to review Ardelle's accounting records; and (2) the State's disclosure of witnesses on the day of trial without providing contact information.

█ The court's power to dismiss under CrR 8.3(b) is discretionary and reviewable only for a manifest abuse of that discretion.[4] There must be a showing of governmental misconduct or arbitrary action.[5] The misconduct need not

---

[4]*State v. Laureano,* 101 Wn.2d 745, 762, 682 P.2d 889 (1984); *State v. Cochran,* 51 Wn. App. 116, 123, 751 P.2d 1194, *review denied,* 110 Wn.2d 1017 (1988).

[5]*State v. Laureano, supra; Seattle v. Orwick,* 53 Wn. App. 53, 57, 765 P.2d 913 (1988), *review granted,* 112 Wn.2d 1010 (1989).

be dishonest; simple mismanagement is enough.[6] However, dismissal remains an extraordinary remedy and is appropriate only if the prejudice to the defendant cannot be remedied by granting a new trial.[7]

Coleman asserts that the State intentionally hindered his attempts to review Ardelle's accounting records and that the access he was eventually given was inadequate given the amount of material. He also asserts that the State's failure to identify its witnesses before the first scheduled trial date, and then its failure to provide addresses and telephone numbers for these witnesses, was misconduct that prejudiced his ability to present a defense.

We note that while there was delay in providing the accounting records, Coleman's counsel was sufficiently familiar with the records to persuade the judge that there was insufficient evidence to arrest the judgment. Ardelle's accounting records were in her possession, not in the State's possession. Coleman had made no previous efforts to secure them by subpoena or otherwise, and they were available for review over the weekend. There is no showing that any further time in examining the records would have changed the conduct of the trial in any way.

As to the failure to provide contact information on the State's witnesses, the findings do not support the conclusion of governmental misconduct. The telephone numbers for Hawkins and Russell were provided at least by the morning of the first day of trial, and probably before that. The record is unclear as to when or if the telephone number of Myrick was provided. There is no evidence that the State had contact information on the maintenance man that it could have provided to Coleman or that he had testimonial knowledge.

---

[6]*State v. Laureano, supra; State v. Stephans,* 47 Wn. App. 600, 603, 736 P.2d 302 (1987).

[7]*State v. Baker,* 78 Wn.2d 327, 332–33, 474 P.2d 254 (1970); *State v. Cochran, supra.*

The State is obligated to fulfill its discovery responsibilities but the defendant also has a responsibility to investigate and prepare. While falling below the desirable standard, the State's actions, in the absence of any demonstrable prejudice to the defendant, do not rise to the level of misconduct or mismanagement justifying dismissal.

Whatever the shortcomings in discovery, they were well known to the trial judge. If they had prejudiced the defendant's preparation, the appropriate remedy was a continuance at that time, not the drastic remedy of dismissal with prejudice at the conclusion of the trial. Coleman did not seek a further continuance at the commencement of the trial when his motion for dismissal was denied. One is not entitled to speculate on the result of a trial and then seek relief by reason of a problem which could have been cured in advance. Dismissal was an abuse of discretion. The alternative remedy of a new trial was not considered by the trial judge and is not urged on appeal, so we express no opinion thereon.

The judgment is reversed with instructions to enter a judgment on the verdict and proceed to sentencing.

COLEMAN, C.J., and WINSOR, J., concur.

Review denied at 113 Wn.2d 1017 (1989).