[No. 24534-1-I. Division One. December 10, 1990.]

THE STATE OF WASHINGTON, *Appellant,* v. LYNDA JOANN SHERMAN, *Respondent.*

*Norm Maleng, Prosecuting Attorney,* and *Robert A. Knief, Deputy,* for appellant.

*Anthony Savage,* for respondent.

WINSOR, J.—The State appeals the trial court's dismissal of five counts of theft against the defendant, Lynda Sherman, a/k/a Lynda Sherman–Mead (Mead). We affirm.

On September 12, 1985, the State charged Mead with one count of theft in the first degree, alleging that she had stolen money from her employer.

On April 14, 1989, the court set the matter for trial on July 10, 1989. The court also entered an omnibus order requiring the State to provide the defendant and her counsel the following items, no later than 2 weeks prior to trial: (1) a separate and distinct witness list; and (2) all records submitted by the employer to the Internal Revenue Service (IRS) relating to Mead's employment from May through October 1984. A deputy prosecutor from the Office of the King County Prosecuting Attorney approved the order.

On July 11, 1989, 1 day after the trial was originally scheduled, the State made a motion to reconsider the omnibus order. The trial court denied the motion. On that same day, the State obtained an order requiring Mead to give samples of her handwriting.

On July 18, 1989, 8 days after trial was to have commenced, the State filed, over objection by the defense, an amended information in which the one count of first degree theft as charged in the original information was expanded to three counts of second degree theft and two counts of first degree theft. The victim in each count of the amended information was still Mead's employer, and the time involved in the amended information was the same as set forth in the original information. The prosecutor had merely broken down the original charge of first degree theft into smaller component parts, alleging that each separate theft involved an individual check.

On July 20, 1989, when the case came to trial, the State had not provided the defense with either a separate and distinct witness list or the IRS records that were the subject of the omnibus order.

Consequently, defense counsel moved to dismiss pursuant to CrR 4.7(h)(7)(i).[1] The trial court held a hearing on the motion that day. During the hearing, the prosecutor further notified Mead and her counsel that the State would move to expand the witness list to include an expert on the subject of handwriting analysis.

The trial court granted the motion to dismiss, concluding as a matter of law that Mead's due process rights had been violated by the State's failure to provide discovery, its filing of a motion to reconsider a discovery order after the date trial was to have commenced, its filing of an amended information after the scheduled trial date, and its attempt to expand the State's witness list on the day of trial. It reasoned that if considered individually, each of the State's actions might not require dismissal; however, when considered collectively, the State's actions amounted to a violation of Mead's due process rights. The State appeals the order of dismissal.

I

Preliminarily, we note that it is unclear under which court rule the court entered its dismissal order. Although Mead's motion to dismiss cited CrR 4.7 for discovery violations, the court's order of dismissal indicated additional grounds for dismissal which were not discovery related: the late amendment of the information and the filing of the motion to reconsider. Because the trial court's order covered more than discovery violations, we conclude that it

---

[1] CrR 4.7(h)(7)(i) states:

"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances."

must have been entered pursuant to CrR 8.3(b), not CrR 4.7. *See State v. Dailey,* 93 Wn.2d 454, 457–58, 610 P.2d 357 (1980). CrR 8.3(b) states: "The court on its own motion in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution and shall set forth its reasons in a written order."

■■ This distinction is important, because case law sets forth certain requirements for CrR 8.3(b) dismissals. The Supreme Court has interpreted CrR 8.3(b) to require a showing of arbitrary action or governmental misconduct before dismissal of a prosecution is appropriate. *Dailey,* 93 Wn.2d at 457; *State v. Burri,* 87 Wn.2d 175, 183, 550 P.2d 507 (1976). Thus, if there is evidence of arbitrary action or governmental misconduct, we will not reverse absent an abuse of discretion.[2] *State v. Sulgrove,* 19 Wn. App. 860, 863, 578 P.2d 74 (1978). In addition, "governmental misconduct need not be of an evil or dishonest nature; simple mismanagement" also falls within [the] standard." *Sulgrove,* 19 Wn. App. at 863; *accord, Dailey,* 93 Wn.2d at 457.

Notwithstanding this deferential standard of review,

> [d]ismissal of charges is an extraordinary remedy. It is available only when there has been prejudice to the rights of the accused which materially affected the rights of the accused to a fair trial and that prejudice cannot be remedied by granting a new trial.

*State v. Baker,* 78 Wn.2d 327, 332–33, 474 P.2d 254 (1970). When they deem it necessary, Washington appellate courts have not hesitated in overturning a trial court's dismissal of

---

[2]The proper review standard in cases involving discretionary decisions was first stated in *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971):

> Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.

*See State v. Allert,* 58 Wn. App. 200, 209–10, 791 P.2d 932, *review granted,* 115 Wn.2d 1007 (1990); *Coggle v. Snow,* 56 Wn. App. 499, 504–07, 784 P.2d 554 (1990); *but see State v. Lewis,* 115 Wn.2d 294, 298–99, 797 P.2d 1141 (1990) (applying the standard that "[d]iscretion is abused only where it can be said that no reasonable person would take the view adopted by the court.").

charges. *See, e.g., State v. Getty,* 55 Wn. App. 152, 777 P.2d 1 (1989) (dismissal of juvenile action reversed because even if government did commit misconduct, defendant suffered no prejudice); *State v. Coleman,* 54 Wn. App. 742, 775 P.2d 986 (dismissal overturned because State's dilatory actions produced no demonstrable prejudice to defendant), *review denied,* 113 Wn.2d 1017 (1989); *State v. Clark,* 53 Wn. App. 120, 124–25, 765 P.2d 916 (1988) (trial court's dismissal of charges inappropriate when sex abuse victim *refused to give any statements to the defense in pretrial* interviews, and the State had not interfered in the interviews in any way), *review denied,* 112 Wn.2d 1018 (1989).

█ The State, as the appellant, has the burden of proving that any prosecution error affecting Mead's constitutional rights was harmless error. "Under the harmless error theory, a violation of [the defendant's] constitutional rights does not warrant dismissal if the State proves beyond a reasonable doubt that the violation did not prejudice [the defendant]." *Getty,* 55 Wn. App. at 155–56.

## II

With those principles in mind, we turn to the merits of the appeal. The trial court cited four grounds for its ruling: the State's failure to produce the IRS records, its late amendment of the information, its late motion to reconsider the omnibus order, and its attempt to expand the witness list on the day of trial. The State contends that none of the grounds relied upon by the trial court, either individually or collectively, justifies the extraordinary remedy of dismissal.

We disagree. The State's failure to produce the IRS records, in and of itself, is a sufficient ground on which to affirm the dismissal. In the April 14 omnibus order, the State agreed to undertake production of the IRS records of the complaining witness. In spite of this agreement, the State failed to produce the records, and then waited until the day after trial was to have begun to seek reconsideration of the order.

■ The State argues that its failure to produce the records does not warrant dismissal because it attempted in good faith to obtain the records, which were not in its control, and that the defense should have made an independent effort to obtain the records. The State further argues that the defense should have sought a continuance to allow time to produce the records, and because it did not, dismissal is an inappropriate remedy.

The fact that the State did not have physical control of the records, or that the defense did not independently attempt to locate the records, does not excuse the State's actions. The omnibus order, agreed to by the prosecution, specifically placed the onus on the State to give the IRS records to the defense prior to trial. The defense had no obligation to attempt to get the records from the State's complaining witness, because the State had agreed to provide them. Further, although the material was not in the hands of the State, it was available to its chief witness, the employer. While the employer did unsuccessfully attempt to locate the records in his files, the State failed to follow up to ensure that the records were produced in a timely fashion. As a result, the employer did not request copies of the records from the IRS until the week before the hearing on the motion to dismiss, 10 days after trial was originally scheduled to start.

Nor do we find persuasive the State's argument that the defendant should have sought a continuance to allow time for the State to produce the records. Here, the speedy trial expiration date had been extended a total of seven times, and was scheduled to expire again on the day the case was dismissed. To require Mead to request a continuance under these circumstances would be to present her with a Hobson's choice: she must sacrifice either her right to a speedy trial or her right to be represented by counsel who had sufficient opportunity to prepare her defense. The Supreme Court recognized this problem in *State v. Price*, 94 Wn.2d 810, 814, 620 P.2d 994 (1980):

> We agree that if the State inexcusably fails to act with due diligence, and material facts are thereby not disclosed to defendant until shortly before a crucial stage in the litigation process, it is possible either a defendant's right to a speedy trial, or his right to be represented by counsel who has had sufficient opportunity to adequately prepare a material part of his defense, may be impermissibly prejudiced. *Such unexcused conduct by the State cannot force a defendant to choose between these rights.*

(Italics ours.) In circumstances such as these, we do not believe a defendant should be asked to choose between two constitutional rights in order to accommodate the State's lack of diligence.

We recognize that *Coleman,* 54 Wn. App. at 748–50, arguably holds to the contrary. In *Coleman,* the appellate court reversed an arrest of judgment based in part on a CrR 8.3(b) dismissal. The court held that the State's hindering and delaying of the defendant's requests to review his former employer's accounting records was an insufficient ground on which to base dismissal.

*Coleman* is distinguishable from this case for several reasons. First, in *Coleman* the State had been ordered merely to "assist" the defendant in requesting the employer to allow the defense access to records. In this case, the State had agreed to get the records for the defense. Second, the *Coleman* defendant was able to review the records prior to trial. Here, the records were never produced. Third, while the defense in *Coleman* was familiar with the contents of the records, here, neither side knows for certain what the records contain. However, like *Coleman,* the defense did not request a continuance to allow it to obtain the records, and the State did not have the records within its possession.

■ While we find the differences mentioned sufficient to make the two cases distinguishable, we disagree with *Coleman* to the extent that it arguably stands for the proposition that the appropriate remedy for discovery problems must be a continuance. *See* 54 Wn. App. at 750. We believe that the question of whether dismissal is an appropriate

remedy is a fact–specific determination that must be resolved on a case–by–case basis.[3]

Turning to the harmless error question, we cannot find the prosecution's error in failing to provide the records to be harmless beyond a reasonable doubt. *See Getty,* 55 Wn. App. at 155–56. The IRS records could have been of great importance to the defense's case because, apparently, the employer had reported to the IRS that the sums Mead allegedly stole were income to Mead. Thus, the documents might have been crucial to the defense in cross–examining the employer. The importance of the records to the defense is evidenced by the fact that defense counsel wrote the prosecutor's office within 2 weeks of the entry of the April omnibus order to emphasize his need for the records. Hence, the State's failure to produce them could have been prejudicial to the defense, had the case gone to trial.

 Because no trial ever occurred, we can only speculate as to the extent of prejudice the defendant may have suffered due to the State's violation of the discovery order. Speculation that prejudice could have been cured, however, is an insufficient basis to find an abuse of discretion in a trial court's decision to dismiss. *Burri,* 87 Wn.2d at 183.

---

[3]The *Coleman* court made no citation to authority for its statements that "[w]hatever the shortcomings in discovery, they were well known to the trial judge. If they had prejudiced the defendant's preparation, the appropriate remedy was a continuance at that time, not the drastic remedy of dismissal with prejudice". 54 Wn. App. at 750.

Other cases that have stated this rule involved situations in which the defendant had steadfastly refused to request a continuance to allow defense counsel further time to prepare for the case, and the motion to dismiss was denied by the trial court. *See State v. Laureano,* 101 Wn.2d 745, 762–63, 682 P.2d 889 (1984), *overruled on other grounds in State v. Brown,* 113 Wn.2d 520, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4th 989 (1989); *State v. Cohen,* 19 Wn. App. 600, 605–06, 576 P.2d 933, *review denied,* 90 Wn.2d 1022 (1978). The *Coleman* court took the idea a step further by overturning a trial court's dismissal and stating that a continuance was the correct remedy. 54 Wn. App. at 750.

We are not convinced that a blanket rule, such as that the *Coleman* court announced, should be applied uniformly without regard to the specific facts of the case. When the defendant is forced to abridge his or her speedy trial right in order to obtain discovery necessary to prepare his or her defense, we believe that the trial court may properly exercise its discretion by granting a dismissal.

■ In addition, the other grounds cited by the trial court—the late amendment of the information, the failure to produce the separate witness list, and the motion to add an expert witness on the day of trial—demonstrate the extent of the State's mismanagement of the case.[4] These actions, when taken together, compromised defense counsel's ability to adequately prepare for trial—a denial of the defendant's right to counsel. *Burri,* 87 Wn.2d at 180. As noted by the court in *Burri,* the right to counsel is an ingredient of a fair trial. 87 Wn.2d at 183.

The mismanagement here is similar to that in *State v. Dailey,* 93 Wn.2d 454, 610 P.2d 357 (1980). There the trial court relied on numerous instances of prosecutorial mismanagement occurring throughout the proceedings as grounds for dismissal of a charge of negligent homicide. On review, the Supreme Court found that incidents of mismanagement in the case—the State's late compliance with the omnibus order, its failure to disclose its witness list until 1 court day before trial, its dilatory compliance with the bill of particulars, and late dismissal of charges against a codefendant—amply supported the trial court's discretionary decision to dismiss the charge because of due process violations. 93 Wn.2d at 459.

---

[4]Although not determinative of the question of whether Mead's due process rights were violated, we note that the record here shows that the congestion in King County Superior Court was a factor in the delay of Mead's trial. Because of the problems of overload of criminal cases, probably related to the inadequate numbers of prosecutors, defense lawyers, and trial judges, the speedy trial date in this case was first set at May 2, but then was changed seven times: May 25, June 8, June 22, July 10, July 13, July 17, and finally to July 20. The last several changes were necessary because the prosecutor assigned to this case was trying other cases.

Tardy compliance with discovery, or other court rules, presents difficult obstacles for judges managing a congested court. Once the court has all needed counsel, a trial judge and a courtroom available, it is essential that the court be able to move the case through trial and that the litigants be ready to proceed. Sloppy discovery practices, late motions to reconsider, to add witnesses, and to reconsider omnibus orders are all very burdensome to the system.

A similar series of events occurred here. After examining the State's actions, we cannot say the court abused its discretion in granting the motion to dismiss.

The decision of the trial court is affirmed.

WEBSTER and BAKER, JJ., concur.