# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | ) |
| | ) No. 76545-1-I |
| Respondent, | ) |
| | ) DIVISION ONE |
| v. | ) |
| | ) UNPUBLISHED OPINION |
| NICHOLAS ADAM ZYLSTRA, | ) |
| | ) |
| Appellant. | ) FILED: November 26, 2018 |
| | ) |

BECKER, J. — A motion to dismiss a criminal charge because of the State's material misconduct will be granted only if the defendant shows prejudice. In this case, the trial court did not abuse its discretion by denying the defendant's motions to dismiss. Although the State's discovery violations in this case were ongoing and egregious, they did not force the defendant to choose between his right to a speedy trial and his right to adequately prepared counsel.

## FACTS

On June 16, 2013, Whatcom County deputies responded to a report of shots fired in a rural area near the Nooksack River. Alyssa Smith was attending a backyard barbecue on the west side of the river. Suddenly, rapid gunfire was heard and bullets came flying over the back yard. A stray bullet struck Smith in the chest. She was taken to a hospital where she was pronounced dead.

The deputies determined that the shots had likely been fired from the other side of the river, roughly half a mile from the Smith residence. Officers found appellant Nicholas Zylstra and four friends walking away from that general

location. Zylstra's group had been engaged in target practice with various firearms. They had been firing across the river in the direction of the Smith residence, relying on a raised berm along the river bank to stop their bullets. An AK-47 belonging to Zylstra was soon identified as the source of the bullet that killed Smith.

The State charged Zylstra with first degree manslaughter in February 2014. Two and a half more years elapsed before Zylstra was brought to trial in November 2016. The trial court granted 14 continuances that were agreed upon by the parties.

By the time the trial was called on Monday, November 28, 2016, the State had evidence that, while the men in Zylstra's group had taken turns firing the AK-47, Zylstra was the one who was shooting it when someone heard a scream from across the river and then the sound of sirens. According to some of his companions, Zylstra had been shooting from the hip in a manner known as "bump firing." With this technique, which uses the force of the firearm's recoil to achieve rapid firing, it is difficult to aim accurately. The State alleged that Zylstra fired recklessly or carelessly in the direction of the Smith residence without realizing that the shots were going high enough to clear the berm. Zylstra's defense theory was that it was impossible to know who had fired the shot that killed Smith.

The State had repeatedly violated its discovery obligations. The problem of belated discovery became acute on November 30, 2016. Three days into the trial, with the parties about to complete voir dire, the State disclosed more items

of evidence, including 911 recordings, computer aided dispatch logs from the day of the shooting, and new police reports. The trial court found the situation "maddening" and said, "We've had multiple discovery hearings over the last year plus and, you know, I have ordered the State repeatedly to comply. And, you know, what is my remedy at this point? They're completely hamstrung if they're getting bits and pieces of information."

At this point, defense counsel asserted that the appropriate remedy was dismissal under CrR 8.3(b). "We thought we had everything because we were told we had everything pursuant to the year ago's order . . . now we're in trial a year later, and we're still getting reports. I don't know how it can be excused. . . . I think this case should be dismissed based on mismanagement and put everybody out of their misery on this." Defense counsel pointed out the difficulty of finding time during the trial for defense interviews of the witnesses identified in the newly-disclosed documents.

The court took the motion to dismiss under advisement while voir dire continued. Before the afternoon session began, the court said the newly disclosed information did not appear to be "material to the point that would result in dismissal." But the court recognized that the defense had a legitimate interest in exploring the new information and interviewing the officers involved. The court offered Zylstra a continuance: "I think I have to conclude at this point that that's the only option I have."

Zylstra did not want a continuance. "Give us maybe tomorrow to get the State to comply, and we can proceed." The court offered to give Zylstra's

defense team the rest of the week to "catch up" in lieu of a continuance, recognizing that defense interviews could lead to development of material evidence. Zylstra agreed to that plan. "I'll withdraw the motion to dismiss at this point, but if we continue to get reports, we do get to raise it in an ongoing manner. So we will withdraw our motion to dismiss based on 8.3(b), and we can proceed if the Court were to grant us a bit of time."

The prosecutor argued for a formal continuance: "So I'd like to be given more time to make sure we have everything." The court firmly rejected the idea of continuing the trial for the State's benefit. "What I am telling you is that, you know, we're going to move forward. . . . [The defense is] ready to proceed, they're not asking for a continuance or a dismissal at this point, but I'm not preventing them from renewing such a request if we continue to have this problem."

The trial proceeded on that basis. The jury was empaneled by the end of the day. During trial recesses, defense counsel interviewed the new witnesses. The defense did not renew the request for a dismissal during the trial.

On December 19, the jury convicted Zylstra on the lesser included offense of second degree manslaughter.

Two weeks after the jury verdict, Zylstra brought new motions for dismissal under CrR 4.7 and CrR 8.3. The trial court denied these motions in an 18-page written ruling.

Zylstra assigns error to the denial of the CrR 8.3 motion brought during trial and the two post-conviction motions. He contends that the State's "rolling

discovery" of material information prejudiced his constitutional right to a fair trial with adequately prepared counsel. He asks this court to reverse his conviction and remand for dismissal of the charge with prejudice.

ANALYSIS

We review a trial court's CrR 4.7 and CrR 8.3 rulings for the abuse of discretion. State v. Barry, 184 Wn. App. 790, 797, 339 P.3d 200 (2014). A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. Barry, 184 Wn. App. at 797.

CrR 4.7(h)(7) authorizes a trial court to grant a continuance or dismiss an action if a party fails to comply with discovery obligations:

> (i) if at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances.

To support a motion to dismiss based on a discovery violation, a defendant must show, not only that the prosecution failed to act with due diligence and withheld material facts, but also that the discovery violation essentially compelled the defendant to choose between two distinct rights: the right to a speedy trial and the right to adequately prepared counsel. Barry, 184 Wn. App. at 796-97; State v. Price, 94 Wn.2d 810, 814, 620 P.2d 994 (1980).

CrR 8.3(b) allows for dismissal for governmental misconduct:

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused

which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

Dismissal under CrR 8.3(b) is an extraordinary remedy to which the court should resort only in truly egregious cases of mismanagement or misconduct. State v. Wilson, 149 Wn.2d 1, 9, 65 P.3d 657 (2003). The misconduct must result in prejudice affecting the defendant's right to a fair trial, including the right to a speedy trial and the right to adequately prepared counsel. Barry, 184 Wn. App. at 797.

On November 30, 2016, three days into the trial, Zylstra orally moved to dismiss the charge under CrR 8.3(b) on the basis of the new police reports and other evidence that had just been disclosed. At the time, Zylstra had about 30 more days left in his speedy trial period. When the court stated that a continuance rather than dismissal was the appropriate remedy, Zylstra withdrew the motion. The State contends Zylstra thereby waived any claim of error with respect to the trial court's decision on that date.

A defendant may waive an objection by affirmatively withdrawing a motion. State v. Valladares, 99 Wn.2d 663, 672, 664 P.2d 508 (1983). Zylstra contends that he withdrew the motion only because the trial court had refused to grant it at that time. For that reason, he argues, the withdrawal of the motion he made during trial should not be deemed a failure to preserve the alleged error. He argues that the record shows he was prejudiced by the State's egregious mismanagement of discovery.

Even if Zylstra did not waive the issue by withdrawing the motion to dismiss on November 30, 2016, or by failing to renew it until after the jury's

6

verdict came in, he has failed to show the trial court abused its discretion by rejecting his motions to dismiss. The trial court concluded that, assuming the motion was timely, it nevertheless was properly denied because Zylstra failed to show he was prejudiced by the late discovery. We reach the same conclusion.

When Zylstra moved to dismiss during trial, he still had ample time remaining before the speedy trial deadline. In this situation, a trial court does not abuse its discretion by determining that a continuance is the appropriate remedy. State v. Brush, 32 Wn. App. 445, 648 P.2d 897 (1982), review denied, 98 Wn.2d 1017 (1983). "Because the available remedy was the granting of a continuance and since defense counsel did not move for such a continuance, the prosecutor's noncompliance with the discovery rule was not prejudicial error." Brush, 32 Wn. App. at 456. Such an error is reversible "only when it is prejudicial." Brush, 32 Wn. App. at 456.

Relying on Brush, the trial court concluded in its written post-conviction ruling that Zylstra was not entitled to a dismissal because he had rejected the offer of a continuance to ensure that defense counsel was adequately prepared. The court said, "The fact that the defense did not like its remedy doesn't change the fact that there was one." The court observed that with a continuance, counsel for Zylstra "would have had time to review the late produced material. The choice not to take the continuance may have been a strategic one, but that does not entitle Zylstra to now obtain a dismissal when alternative remedies were not taken. To do so would create an incentive for defendants to withhold

objections and refuse remedies provided under the law and 'lie in wait' to later seek dismissal."

Zylstra contends that the prejudice from the late disclosure did not become apparent until defense counsel had the opportunity during trial to interview newly disclosed Ferndale Police Officer Michael Healy. Officer Healy was one of the first officers to arrive, but he did not write a report. In the interview, Officer Healy remembered bullets were still flying overhead as he and another officer attended to the victim. The State's case emphasized the testimony of Zylstra's companions that Zylstra was the last person to fire the AK-47. If Officer Healy had testified at trial that rapid shooting continued after Smith fell to the ground, it would have supported Zylstra's argument that the last person to fire the AK-47 was not necessarily the one who fired the fatal bullet.

The trial court's post-conviction ruling discussed the potential testimony of Officer Healy. The court noted that other witnesses gave similar testimony, including Smith's sister, who recalled hearing bullets whiz by overhead after she realized Smith had been hit. The court thus agreed with Zylstra that Officer Healy could have given material evidence. The court nevertheless concluded that Zylstra was not prejudiced by the belated disclosure of Officer Healy, because it did not force Zylstra to choose between his right to a speedy trial and his right to have adequate time to prepare a defense.

We agree with the trial court's reasoning. At the beginning of trial when the court first considered Zylstra's motion to dismiss, the court did not see anything material in the belated disclosures, but the court permitted defense

interviews to occur during trial recesses knowing that they might produce material evidence. The court invited Zylstra to renew the motion to dismiss if that happened and signaled that such a motion might well be granted. Zylstra did not renew the motion to dismiss during trial. Zylstra could have called Officer Healy as a witness. The reason he gives for not calling Officer Healy—that in light of the State's ongoing new disclosures, he "could not take the risk that the prosecution would disclose new evidence undercutting Officer Healy's testimony"—is unconvincing.

A dismissal is an extraordinary remedy. Wilson, 149 Wn.2d at 9. The general approach to discovery violations is "to impose the least severe sanction that adequately addresses the prejudice." State v. Salgado-Mendoza, 189 Wn.2d 420, 431, 403 P.3d 45 (2017). The discovery violations did not prevent Zylstra from highlighting the inconsistencies within the State's timeline. His closing argument pointed out the conflicting testimony about whether additional shots were fired after Smith was hit. Zylstra's trial strategy was to convince the jury that it was impossible to know who fired the fatal shot. He does not demonstrate that his strategy would have been altered if Officer Healy or the other late items of evidence had been disclosed earlier.

Zylstra cites several cases in which a trial court's decision to dismiss for mismanagement of discovery was affirmed on appeal: State v. Dailey, 93 Wn.2d 454, 456, 610 P.2d 357 (1980), State v. Martinez, 121 Wn. App. 21, 36, 86 P.3d 1210 (2004), as amended on reconsideration (Apr. 20, 2004), and State v. Sherman, 59 Wn. App. 763, 773, 801 P.2d 274 (1990). Here, as in Barry, we

affirm a trial court's exercise of discretion to deny a motion to dismiss. The trial court ruled with a firm grasp on the facts of the case and the relevant case law. The denial of Zylstra's motions to dismiss was not manifestly unreasonable.

The sentence imposed on Zylstra included $200 as a legal financial obligation for a criminal filing fee as was then required under former RCW 36.18.020(2) (2017). The legislature has since amended that statute through House Bill 1783, effective June 7, 2018. Under the statute, as now amended, the $200 fee remains mandatory "except this fee shall not be imposed on a defendant who is indigent as defined in RCW 10.101.010(3)(a) through (c)." RCW 36.18.020(2)(h). The amendments apply prospectively to cases pending on appeal. State v. Ramirez, ___ Wn.2d ___, 426 P.3d 714, 721-23 (2018). In light of Ramirez, we allowed Zylstra to file a supplemental assignment of error challenging the $200 fee. The State concedes that Zylstra is considered indigent and the fee should be stricken from the judgment and sentence. Accordingly, we remand for the trial court to amend the judgment and sentence to strike the obligation to pay the $200 fee.

The conviction is affirmed. The sentence is remanded for correction as set forth above.

Becker, J.

WE CONCUR:

Chun, J.                    Andrus, J.

10