IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 77646-1-I |
| Respondent, | DIVISION ONE |
| v. | |
| SETH LAMAR FRIENDLY, | UNPUBLISHED OPINION |
| Appellant. | FILED: July 1, 2019 |

CHUN, J. — The State charged Seth Friendly with one count of first degree assault with a firearm. Because Friendly was over 16 years old and charged with a serious violent offense, his case was automatically declined to adult court. After a jury convicted him, the court sentenced Friendly to the low-end of the standard range (93 months) plus 60 months for the firearm enhancement.

Friendly appeals, claiming the trial court erred by: (1) not providing him with a decline hearing before transferring his case to adult court, (2) denying his motion to dismiss under CrR 8.3(b) for governmental misconduct, (3) violating ER 404(b) by admitting propensity evidence, and (4) abusing its discretion by failing to consider his youthfulness when sentencing him. Because the trial court did not err, we affirm.

I.
BACKGROUND

A. The Shootings

Around 10 p.m. on June 6, 2016, S.L.S. left the apartment of her friend, Mario Jimenez. Jimenez belonged to the LAC gang. S.L.S. understood the LAC

gang to have a rivalry with the DSM gang.

As S.L.S. began driving out of the apartment complex, she saw two boys running toward her from the opposite side of the street. The boys began shooting at her car. S.L.S. recognized one of the boys as Friendly because she had gone to high school with him. Friendly has "DSM" tattooed on his neck. S.L.S. put her head down and accelerated. After driving away, S.L.S. saw a police officer, Sergeant Adam Fortney, and flagged him down. S.L.S. told Sergeant Fortney about the shooting.

Officer Ryan Hanks received a call to respond to shots fired. When he arrived at the scene, another officer informed him that they had found five .45 shell casings. The police had also found fresh, blue-colored spray painting on a nearby electrical box. Because of the color and content of the spray painting, the police believed it was DSM gang graffiti.

Five days later, on June 11, 2016, police responded to another report of a shooting outside of Jimenez's apartment. Police located six shell casings. While driving to his containment position, Sergeant Joseph Woods saw four individuals walking. One turned around and saw Sergeant Woods driving toward them. All four individuals then began to run. Police arrested three of them, including Friendly, at a nearby golf course. Police separately arrested the fourth individual, who had a .45 caliber pistol. Subsequent testing of the shell casings determined that the pistol had fired the rounds from both the June 6 and June 11 shootings.

2

B. Trial

Friendly had turned 16 years old on May 29, 2016. Seventeen days later, on June 15, 2016, the State charged him with one count of first degree assault while armed with a firearm. The charge related to the June 6 shooting involving S.L.S.

Because Friendly was 16 years old and the State charged him with a serious violent offense, his case was automatically declined to adult court. Friendly filed a Motion Objecting to Auto-Declination, but the trial court denied the motion.

Shortly before the trial began, Friendly received a forensic report from the State that the shell casings from the June 6 and June 11 shootings matched each other and the .45 caliber pistol recovered after the June 11 shooting. Friendly claimed that because he received the report so late, he did not have enough time to hire an expert to review the results. The court continued the trial over Friendly's objection.

On June 5, 2017, during motions in limine, Friendly moved to dismiss his case under CrR 8.3(b). He argued the State's delay in providing the forensic report constituted governmental misconduct and prejudiced him by forcing a choice between his speedy trial right and being prepared for trial. The court denied his motion. The State then moved to admit evidence of Friendly's involvement in both the DSM gang and the June 11 shooting. The court allowed testimony on both issues.

The jury convicted Friendly as charged on June 8, 2017. At the

sentencing hearing held on October 19, 2017, Friendly presented an expert who recommended juvenile detention until his 21st birthday. The expert indicated that juvenile detention provided Friendly with the best chance at rehabilitation. The court declined to follow the expert's recommendation. Instead, it sentenced Friendly to the low-end of the standard range (93 months) with a 60-month firearm enhancement, for a total of 153 months.

Friendly appeals.

## II.
## ANALYSIS

A. Automatic Decline

Friendly first argues the trial court violated his right to due process by refusing to provide him with a hearing before automatically declining his case to adult court. In his opening brief, Friendly asks us to reject the Washington Supreme Court's 1996 decision in In re Boot, which held that automatic decline is constitutional. 130 Wn.2d 553, 570-71, 925 P.2d 964 (1996). Friendly argues that because of subsequent developments in the United States Supreme Court's case law, "Boot stands in tension with current jurisprudence on how youth must be treated when they are charged with crimes." Friendly also offers several policy arguments, including better protection of youth and lower recidivism rates in the juvenile system.

After Friendly submitted his opening brief, the Washington Supreme Court revisited whether automatic decline violates a juvenile's right to due process. State v. Watkins, 191 Wn.2d 530, 423 P.3d 830 (2018). A majority of the Court

reaffirmed its holding that "automatic decline does not violate due process because juveniles do not have a constitutional right to be tried in juvenile court." Watkins, 191 Wn.2d at 533.

In his reply brief, Friendly acknowledges Watkins but asks us to "reexamine this issue, relying on the arguments made in his opening brief." App. Reply at 1. But we are bound by majority opinions of the Supreme Court. See In re Pers. Restraint of Kiet Hoang Le, 122 Wn. App. 816, 820, 95 P.3d 1254 (2004). Because Friendly provides no legal reason to do otherwise, we adhere to the holding in Watkins. Accordingly, we determine that automatic decline is constitutional.

B. 404(b) Evidence

Friendly next contends the trial court violated ER 404(b) by admitting evidence that he had a gang affiliation and that he had been involved in a second, uncharged shooting. The State argues the court properly admitted the evidence to show motive. We agree with the State.

1.      Legal Standards

We review a trial court's decision to admit or exclude evidence under ER 404(b) for an abuse of discretion. State v. Arredondo, 188 Wn.2d 244, 256, 394 P.3d 348 (2017). A trial court abuses its discretion if no other reasonable trial court would have made the same ruling, or if it based its ruling on untenable grounds. Arredondo, 188 Wn.2d at 256.

Under ER 404(b), courts may not admit evidence of a defendant's prior acts to show propensity, but may admit it for certain other purposes:

> (b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Before admitting evidence of a past act, ER 404(b) requires the court to conduct a four-part analysis where it must:

> "(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the [permissible] purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect."

Arredondo, 188 Wn.2d at 257 (alteration in original) (internal quotation marks omitted) (quoting State v. Gresham, 173 Wn.2d 405, 421, 269 P.3d 207 (2012)). If the trial court admits the evidence, it must give a limiting instruction. Arredondo, 188 Wn.2d at 257.

Friendly claims the trial court erred under the third and fourth prongs when it admitted evidence of his gang affiliation and his involvement in the second shooting.

### 2. Gang Affiliation

Friendly argues the gang affiliation evidence did not demonstrate motive because S.L.S. identified him and "[t]here was no question this shooting was an intentional act." But this argument misses the point. The State's theory of the case was that Friendly, a member of the DSM gang, shot at S.L.S. because she had befriended a member of the rival LAC gang. The State used the evidence of gang affiliation to show that Friendly, as a member of the DSM gang, disliked people that associated with the LAC gang. See State v. Yarbrough, 151 Wn.

6

App. 66, 84, 210 P.3d 1029 (2009); see also Arredondo, 188 Wn.2d at 259 (upholding admission of evidence that defendant belonged to the Norteño gang to show motive and intent because it demonstrated his "animosity toward people who are of the Sureño persuasion"). Thus, the evidence helped establish Friendly's motive for shooting at S.L.S.

Additionally, this evidence was highly probative as to the State's theory of the case. Without the rivalry between the two gangs, Friendly seemingly had no motive for shooting at S.L.S., whom he apparently did not know well. That the State also presented other evidence that the shooting was gang-related—namely that Friendly had a DSM tattoo on his neck, DSM graffiti was found at the scene, and S.L.S. had been leaving the home of an LAC gang member—lessened the prejudicial impact of the evidence. Accordingly, we find that the gang affiliation evidence, on balance, was not unduly prejudicial. See Yarbrough, 151 Wn. App. at 85. The trial court did not abuse its discretion by admitting it.

3.    Involvement in Second Shooting

Friendly also claims the trial court erred by admitting evidence of his involvement in the second shooting. He says the evidence is not probative of intent because "S.L.S. testified that she saw someone shooting directly at her." This argument again fails to recognize that the evidence seeks to demonstrate motive rather than intent. Under ER 404(b), a court may admit evidence of an attack by a defendant towards a group of people if the evidence demonstrates an ill feeling between the two. Arredondo, 188 Wn.2d at 260. Friendly's involvement in the second shooting demonstrates his animosity toward people

7

associated with the LAC gang, and thus goes to his motive for the first shooting.

And again, the evidence's probative value outweighed its prejudicial effect. The evidence was highly probative to show motive because it demonstrated on-going violence and a rivalry between Friendly and the LAC gang. This evidence also had increased probative value because the shell casings discovered at each scene linked the two crimes. The trial court did not abuse its discretion by admitting the evidence.

4.      Limiting Instruction

Friendly asserts that even if the court properly admitted the evidence under 404(b), it erred by failing to give limiting instructions. But neither party requested a limiting instruction. The Washington Supreme Court has held that there is no "affirmative duty on the part of the trial court to sua sponte give a limiting instruction in the context of ER 404(b) evidence." State v. Russell, 171 Wn.2d 118, 123, 249 P.3d 604 (2011). Thus, we reject this argument.

C. Governmental Misconduct

Friendly next contends that the trial court should have dismissed the case for governmental misconduct because the State failed to provide him with the forensic report linking the shell casings from the June 6 and June 11 shootings until days before the trial. The State claims the court properly denied Friendly's motion to dismiss on this ground. We conclude the trial court did not manifestly abuse its discretion by denying the motion.

We review a trial court's decision on whether to dismiss charges for a manifest abuse of discretion. State v. Michielli, 132 Wn.2d 229, 240, 937 P.2d

8

587 (1997). "A decision is 'manifestly unreasonable' if the court, despite applying the correct legal standard to the supported facts, adopts a view 'that no reasonable [judge] would take,' and arrives at a decision 'outside the range of acceptable choices.'" State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting State v. Lewis, 115 Wn.2d 294, 298-99, 797 P.2d 1141 (1990); State v. Rundquist, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)).

CrR 8.3(b) permits a trial court to dismiss a criminal case due to arbitrary action or governmental misconduct that prejudiced the defendant:

> (b) On Motion of Court. The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

The Washington Supreme Court has interpreted CrR 8.3(b) to require a two-pronged showing. See State v. Sherman, 59 Wn. App. 763, 767, 801 P.2d 274 (1990). First, the defendant must show arbitrary action or governmental misconduct. Sherman, 59 Wn. App. at 767. Governmental misconduct includes "simple mismanagement," and does not need to be of an "evil or dishonest nature." Michielli, 132 Wn.2d at 239. Second, "[t]he trial court should grant dismissal only if the defendant is prejudiced to the extent of a denial of [their] right to a fair trial." State v. Teems, 89 Wn. App. 385, 388, 948 P.2d 1336 (1997).

Here, Friendly claims the State committed governmental misconduct because it withheld a forensic report for 82 days. Though the lab had conducted

9

the testing in January 2017, the State did not know that the report existed until early April. A different prosecutor took over the case only a week before trial, which began on April 10, 2017. Upon reviewing the discovery, she realized she did not have a forensic report for the shell casings and asked the Everett police if they had sent the casings for testing. The prosecutor stated that when she learned they had, she notified defense counsel and made her best effort to obtain the report as expeditiously as possible. The State believes it did not initially receive the report because the June 6 and June 11 shootings were listed under different cause numbers.

After hearing arguments, the court stated that the affidavit of probable cause "clearly speaks to both events, June 6th and June 11th." It noted the State had also discussed the connection between the two shootings when it objected to Friendly's request for a hearing on automatic decline. Defense counsel had represented Friendly since his case began, and thus presumably knew of the association drawn between the shootings. Because of these previous discussions of the relationship between the two shootings, the court said that it "really [didn't] see a violation of, frankly, any discovery or court rules or anything on behalf of the State. This thing was out there. It was known. It's not a surprise how the State was going to use it." The court then continued the case over Friendly's objection, so that he could prepare and hire an expert.

The record reflects that, in denying Friendly's motion to dismiss, the trial court considered the totality of the circumstances. The State provided reasonable justifications for the delay in providing the report and had made clear

for some time that the prosecution had intended to link the two shootings at trial. Therefore, the court's determination that the State did not commit governmental misconduct was not outside the range of acceptable choices and does not constitute a manifest abuse of discretion. See Rohrich, 149 Wn.2d at 654.

D. Sentencing

Finally, Friendly contends the trial court abused its discretion by not considering his youthfulness when sentencing him. The State argues that this court cannot review the sentence because it was within the standard range and the court did not commit any legal errors. We determine that this case does not require remand for resentencing.

At sentencing, Friendly faced a standard range of 93 to 123 months plus a 60-month firearm enhancement. The State asked the court to sentence Friendly to 123 months—the high end of the standard range—which, with the firearm enhancement, would result in a total sentence of 183 months. The defense requested that the court sentence Friendly to juvenile detention until his 21st birthday. The court sentenced Friendly to 93 months—the low end of the standard range—plus the firearm enhancement, for a total of 153 months in adult prison. Friendly claims the trial court abused its discretion at his sentencing by failing to adequately consider the role youthfulness plays in juvenile culpability. The record, however, does not support his contention.

At sentencing, the defense presented expert testimony that trauma from domestic violence caused Friendly to have a significant distrust of adults. Additionally, the expert noted that Friendly had behaved well during his detention

11

and would benefit from one of the treatment programs offered in the juvenile system. Despite this testimony, the court decided to sentence Friendly to the low-end of the standard range (93 months) plus 60 months for the firearm enhancement. In explaining its sentence, the court discussed the defense's evidence and Friendly's personality, but stated that it did not see a link between Friendly's behavior and the studies on youthfulness:

> There is no doubt that dealing with juveniles is terrifically hard. There is no doubt that their development hasn't reached the level of development you see in [sic] adult population. There's no doubt that the majority are dealing with trauma in one form or another that other folks, normal folks don't have to deal with.
>
> And a juvenile, to get their personality and their minds wrapped around that while at the same time trying to survive, you can see impulse control. I have no question about the studies.
>
> The question I have, though, is, do the studies support it here? And that's what I'm having difficulty with.
>
> . . .
>
> In reading his history, which is lacking for purposes today, I don't get a real sense of being an outcast or somebody who's [sic] been fighting all the time every day. I don't have a history here, criminal history. I don't have sociological history. I don't have anything from schools. I don't have dependencies. I don't have a lot of other things that normally I will see that brings people to the criminal justice system at this age.
>
> He's smart. He's intuitive. Takes a while to get trust of other people. No significant serious mental health issues, intellectually appropriate for his age, bright. I'm not seeing what these studies are asking me to look for. Lack of impulse control.
>
> . . .
>
> Nothing with the doctor about how he did this or didn't do this, how he felt about it, why he did it, what pressures he was under. No information about any gang membership, who he was with, when did he get into the gang, what were the pressures, was he directed to do this, did he do it on his own. Peer pressure as the studies indicate? There's no evidence, no discussion of that or anything today to be able to make an analysis of that.

I don't know what he faced or where his mind was at at the time of these crimes. And without that, I'm unable to say that these applicable studies apply to him. Nobody's given me any information on this impulse control or lack thereof for Mr. Friendly in this specific instance.

The record demonstrates that the court knew it had to consider Friendly's youthfulness and that it could exercise its discretion to sentence him below the standard range. See State v. Houston-Sconiers, 188 Wn.2d 1, 8, 391 P.3d 409 (2017). Despite this discretion, the court did not believe there was a reason to deviate from the standard range. Friendly claims the court erred by sentencing him even though "it lacked the information it needed to make an informed decision on [his] culpability." He offers no authority, however, to support the contention that a trial court's failure to ask for more information before sentencing a juvenile amounts to an abuse of discretion for failing to properly consider youthfulness. We do not remand for resentencing.

Affirmed.

_Chun, C.J._

WE CONCUR:

_[signature]_                                    _Appelwick, C.J._

13